303 Ga. 120
FINAL COPY

S17A1750. MORRISON v. THE STATE.

BOGGS, Justice.

Appellant Richard Morrison was tried before a jury and found guilty of the malice murder of his girlfriend Tammie West Smith.[1] He now appeals pro se, asserting multiple claims of error. Having reviewed these claims, we find them to be without merit, and we affirm.

Viewed in the light most favorable to the verdict, the evidence at trial showed the following. On May 29, 2009, several witnesses saw Morrison and the victim go in and out of Morrison's house. Some of the witnesses heard Morrison argue with and threaten the victim. Around 8:00 p.m., a neighbor was sitting on his porch when Morrison asked him to come over so that he could

---

[1] The crime occurred in May 2009. On May 28, 2010, a Lowndes County grand jury indicted Morrison for malice murder. Following a July 2011 trial, the jury found him guilty, and he was sentenced to life in prison. Morrison's motion for new trial was filed on September 19, 2011, amended by new counsel on November 25, 2015 and February 12, 2016, and denied on March 3, 2017. His notice of appeal was filed on March 14, 2017. This case was docketed in this Court for the August 2017 term and submitted for a decision on the briefs.

show him something. When the neighbor walked into Morrison's home, the victim was lying face down on the floor, naked from the waist down. Morrison told the neighbor, "You see that b\*\*ch right there? I'm gonna kick that b\*\*ch until she give me my money back." The neighbor told Morrison that he had to go and that he "didn't want to see no more." Around 2:55 a.m. on May 30, another neighbor observed Morrison come out of his house with "a small bucket and throw some liquid down."

Around 9:45 a.m., an acquaintance of Morrison saw him at a gas station. Morrison's truck was parked at the pump, and he was putting some things in a dumpster. Around the same time, the victim's body was found in the grass on the side of a nearby road. Her entire face was swollen and bruised, there was blood around her nose and on her shins, and she had an older stab wound on her chest. The victim had several fractured ribs, a fractured vertebral column, a fractured ankle, and an abrasion that appeared to be a carpet burn on her arm. There was sand on the victim's body and clothing. She was wearing a button-up shirt and jeans that were pulled down slightly below her hip bone. There was a piece of masking tape stuck to the victim's jeans. A block and a half from where the victim's body was found, officers found a white sheet with blood on it and

2

a torn blue shirt. The victim's purse was found in the same area, open and sitting up. The medical examiner concluded that the injuries to the victim's face were consistent with someone punching her, and that her death was caused by crushing injuries to her thorax and pelvis and the composite injuries to her chest and back, including the fracture to her vertebral column. He further testified that her injuries were not consistent with her having been struck by a vehicle.

The investigation led to Morrison, who spoke with police after being given *Miranda* warnings. When Morrison was told that the victim was dead, he showed no emotion and told police that the victim was always intoxicated, would stumble and bust her face up, had stabbed herself a month earlier, and that her children would always blame him for what happened to her. When an officer told Morrison that he was being investigated as a possible suspect, he quickly told the officer that the victim dealt with a lot of different people. Two witnesses testified that Morrison and the victim had a tumultuous relationship, and that they had observed violence between them. The victim told one of these witnesses that Morrison had stabbed her two months earlier.

During questioning by police, Morrison gave officers consent to search his home. Upon entering the home, officers smelled cleaning chemicals. The

3

home appeared to have been recently cleaned and the floors recently vacuumed or mopped. Officers noticed a 12- to 13-inch bloodstain on the carpet and what appeared to be splattered blood on a tile floor. Testing of the carpet, the white sheet found not far from the victim's body, and a pair of jeans found in the dumpster at the gas station indicated the presence of the victim's blood. Officers also found masking tape in the kitchen, and noticed marks in the dirt outside the home that looked like something had been dragged across it. A vaginal swab of the victim contained Morrison's DNA profile. When asked about the presence of blood in his home, Morrison told officers that the victim had been at his home the previous night and had a cut on her arm, and that she had stabbed herself a month earlier. He explained that the victim was intoxicated the previous night and was addicted to multiple substances.

1. Morrison argues that the evidence was insufficient to sustain his convictions because it was based on hearsay. To the contrary, the State's case was based upon evidence found in Morrison's home, the testimony of witnesses concerning prior acts of violence between Morrison and the victim, and testimony from those who observed him with the victim on the night of her death and observed him disposing of items in a dumpster in which clothing

4

containing the victim's blood was found. Here, the evidence was sufficient to enable the jury to find Morrison guilty of malice murder beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Morrison contends that the State engaged in prosecutorial misconduct. He complains specifically that the State (1) did not disclose evidence that a female witness's DNA was found on the blue jeans recovered from the dumpster, (2) withheld the victim's medical records, (3) expressed personal opinions and gave improper remarks during trial, (4) made improper references to his truck during trial despite the fact that the truck was cleared by the GBI crime lab of involvement in the victim's death, (5) tainted the jury with the mention of cadaver dogs "hitting" on his truck, (6) violated a court order not to mention "blood" or "luminol" during trial, and (7) allowed the hearsay testimony of the victim's daughter in violation of OCGA §§ 24-8-807 and 24-9-901. None of these assertions, however, establishes prosecutorial misconduct.

With regard to Morrison's claim that the State did not disclose evidence of a witness's DNA found on the victim's clothing, this evidence was in fact presented at trial. And with regard to his claim that the State failed to disclose

5

the victim's medical records, even assuming that this evidence would have been favorable to him, Morrison has failed to show that the State possessed the evidence; that he did not possess the evidence nor could he obtain it himself with any reasonable diligence; that the State suppressed the favorable evidence; and that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceeding would have been different. See Propst v. State, 299 Ga. 557, 566-567 (5) (788 SE2d 484) (2016), citing Brady v. Maryland, 373 U. S. 83 (83 SCt 1194, 10 LE2d 215) (1963).

Morrison does not explain what personal opinions and improper remarks were made by the prosecutor. With regard to the references to his truck and the evidence concerning cadaver dogs, Morrison points to no objection made when this evidence was admitted at trial, and our review of the record reveals none. See Ledford v. State, 264 Ga. 60, 67 (18) (a) (439 SE2d 917) (1994) ("the contemporaneous objection rule cannot be avoided by characterizing trial occurrences as examples of prosecutorial misconduct." (Citation and punctuation omitted)). And Morrison's complaint about the prosecutor's mention of luminol at trial is also without merit. The trial court ruled that it would allow evidence of the use of luminol as long as the investigator did not

6

testify that he knew for certain that the substance luminesced was blood. While the investigator did mention blood in his testimony, he clarified that he could not definitively tell what was luminescing, and explained that the "chemical in luminol will fluoresce with cleaning chemicals and other items."

Morrison complains that the State presented testimony from the victim's daughter in violation of OCGA §§ 24-8-807 and 24-9-901. But Morrison was tried before the 2013 effective date of the new Evidence Code, and under the former necessity exception to the hearsay rule, see former OCGA § 24-3-1 (b), "the proponent must establish a necessity for the evidence, a circumstantial guaranty of the statement's trustworthiness, and that the hearsay statements are more probative and revealing than other available evidence." (Citations and punctuation omitted.) Mathis v. State, 291 Ga. 268, 270-271 (2) (728 SE2d 661) (2012). At the hearing on the matter, Morrison argued that there was no particularized guarantee of trustworthiness in the daughter's testimony, but the trial court took the issue under advisement and allowed the testimony at trial, and Morrison posed no objection when it was introduced. Under these facts, Morrison can show no improper conduct by the prosecutor. See, e.g., Brooks v. State, 285 Ga. 246, 251 (5) (674 SE2d 871) (2009) ("A charge of prosecutorial

7

misconduct is a serious charge and is not to be lightly made; having raised it, appellant has the duty to prove it by the record and by legal authority." (Citation and punctuation omitted)); Kim v. State, 298 Ga. App. 402, 403-404 (2) (680 SE2d 469) (2009) (defendant failed to carry burden of showing prosecutor intentionally solicited improper comment).

3. Morrison asserts that the State deprived him of his right to a speedy trial and speedy indictment, and denied him the right to file a motion for discharge after taking 13 months to indict him. The record reveals that the crime occurred in May 2009, and on November 3, 2009, Morrison filed a pro se demand for speedy trial pursuant to OCGA § 17-7-170.[2] On March 8, 2010, with the assistance of counsel, Morrison filed another statutory demand for speedy trial. Morrison was indicted on May 28, 2010, and on July 6, 2010, and February 9, 2011, with the assistance of counsel, he filed two additional statutory demands for speedy trial. Morrison's trial was held July 25-28, 2011.

Morrison's claim that he was deprived of his right to a speedy trial is

---

[2] OCGA § 17-7-170 governs speedy trial demands in noncapital cases and is therefore inapplicable in this murder case. The applicable Code section for capital cases is OCGA § 17-7-171, which provides in part that "[a]ny person accused of a capital offense may enter a demand for speedy trial at the term of court *at which the indictment is found* or at the next succeeding regular term thereafter[.]" (Emphasis supplied.) OCGA § 17-7-171 (a).

without merit. He was indicted during the March 2010 term of court and was tried within two terms, during the March 2011 term of court.[3] See OCGA § 17-7-171 (b) ("If more than two regular terms of court are convened and adjourned after the term at which the demand for speedy trial is filed and the defendant is not given a trial, then the defendant shall be absolutely discharged and acquitted . . . ."). And Morrison's claim that he was denied the right to a speedy indictment is waived by his failure to properly assert a denial of due process in the trial court below. See Moore v. State, 278 Ga. 473, 474 (2) (604 SE2d 139) (2004) ("although there is no constitutional right to a speedy indictment or to be arrested, certain pre-indictment delays might rise to a denial of due process," but alleged denial of due process for pre-indictment delay will not be addressed for first time on appeal).

4. Morrison complains that a delay of almost four years for his trial transcript inflicted anxiety, fatigue, memory loss, and loss of witnesses due to death. This case was tried in July 2011. On April 29, 2015, Morrison, through counsel, filed a motion seeking production of the transcript. The trial transcript

---

[3] The terms of court for the Lowndes County Superior Court commence on the "[f]irst Monday in March and first Tuesday immediately following first Monday in September." OCGA § 15-6-3 (35) (D).

9

was certified by the court reporter on May 8, 2015, and filed with the clerk of court on May 21, 2015. OCGA § 17-8-5 (a), governing the recordation of testimony in felony cases, provides no timeline for the preparation of the transcript. And, while Morrison alleges prejudice in this delay, he has pointed to none, and he has failed to identify the witnesses he claims were lost by the delay. This claim of error therefore fails. See Brockman v. State, 292 Ga. 707, 715 (5) (a) (739 SE2d 332) (2013).

5. Morrison argues that his trial counsel was ineffective. To succeed on a claim that counsel was constitutionally ineffective, Morrison must show both that his attorney's performance was deficient, and that he was prejudiced as a result. Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). Under the first prong of this test, counsel's performance will be found deficient only if it was objectively unreasonable under the circumstances and in light of prevailing professional norms. Id. at 688-690 (III) (A). And under the second prong, prejudice is demonstrated only where there is a reasonable probability that, absent counsel's errors, the result of the trial would have been different. "Failure to satisfy either prong of the Strickland test is sufficient to defeat a claim of ineffective assistance, and it is not incumbent

10

upon this Court to examine the other prong." (Citation and punctuation omitted.) Smith v. State, 296 Ga. 731, 733 (2) (770 SE2d 610) (2015). And "although both the performance and prejudice components of an ineffectiveness inquiry involve mixed questions of law and fact, a trial court's factual findings made in the course of deciding an ineffective assistance of counsel claim will be affirmed by the reviewing court unless clearly erroneous." (Citation omitted.) Id.

(a) Morrison asserts that trial counsel failed to communicate with him, adequately investigate the case, and prepare for trial. Trial counsel testified at the hearing on the motion for new trial that he visited Morrison more than six times for about an hour each time in preparation for trial, that he went over discovery with Morrison, and that he would discuss the evidence with Morrison but Morrison "was usually prone to derail those conversations to get into issues he wanted to discuss," such as bond issues or his belief that he was being illegally detained. Counsel explained further that he discussed with Morrison the possibility of success at trial based on counsel's belief that the State's case was strictly circumstantial, determined whether the witnesses Morrison named could support the defense, filed motions in limine on Morrison's behalf, determined whether an expert was needed for trial, and discussed with Morrison the

possibility of his testifying.

"[T]here exists no magic amount of time which counsel must spend in actual conference with his client, and [Morrison] does not specifically describe how additional communications with his lawyer would have enhanced his defense." (Citation and punctuation omitted.) Blackmon v. State, 302 Ga. 173, 175 (2) (805 SE2d 899) (2017). Moreover, he has failed to show "what a more thorough investigation would have uncovered." Harvey v. State, 284 Ga. 8, 11 (4) (c) (660 SE2d 528) (2008). His ineffective assistance of counsel claim on these grounds therefore fails.

(b) Morrison argues that counsel failed to properly cross-examine a witness, introduce the victim's medical records, and object to evidence of his truck and of luminol. At the hearing on the motion for new trial, counsel testified that he did not believe he would have been able to subpoena the victim's medical records and that in any event, the records would not have had "any significant bearing one way or the other on the trial." With regard to counsel's cross-examination of a witness, counsel explained that although the witness's DNA was found on the victim's clothing recovered from the dumpster, she could not "provide anything to help the [d]efense" as there was

no evidence that she was in the area where the crime occurred or had access to Morrison's truck. Counsel explained further that he "made the strategic decision not to keep [the witness] on the stand any longer" because she had testified that she had a sexual encounter with Morrison in exchange for crack cocaine. Finally, Morrison argues that counsel should have objected to the State's mention of his truck during trial. Counsel explained that because there was nothing connecting the victim to the truck, e.g., there were "no specific blood traces found," he believed that the State's mention of the truck actually helped the defense.

"[D]ecisions about what questions to ask on cross-examination are quintessential trial strategy and will rarely constitute ineffective assistance of counsel." (Citation and punctuation omitted.) Daniels v. State, 302 Ga. 90, 95 (2) (805 SE2d 80) (2017). And decisions as to what evidence to present or whether to raise a specific objection are ordinarily matters of trial strategy and provide no ground for reversal. Williams v. State, 302 Ga. 474, 486 (IV) (d) (807 SE2d 350) (2017); Walker v. State, 301 Ga. 482, 491 (4) (c) (801 SE2d 804) (2017). Trial counsel's decisions on the matters Morrison complains of fall within the ambit of reasonable trial strategy.

(c) Morrison claims that his trial counsel improperly declined plea offers and denied him the right to file a motion for speedy trial. But Morrison has not shown that he was offered a plea that counsel declined and trial counsel testified that Morrison insisted that "he was not going to plea to anything." Moreover, the record reveals that there were three demands for speedy trial filed on behalf of Morrison between 2010 and 2011. Morrison has shown no deficient performance by trial counsel on these grounds.

Because Morrison has failed to show that his trial counsel performed deficiently on any ground raised, we need not examine the second prong of Strickland, and we hold that the trial court did not err in determining that Morrison was not denied the effective assistance of counsel.

Judgment affirmed. All the Justices concur.

14

Decided February 19, 2018.

Murder. Lowndes Superior Court. Before Judge Cowart.

Richard Morrison, pro se.

Bradfield M. Shealy, District Attorney, Tracy K. Chapman, Michelle T. Harrison, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General, for appellee.