**FIRST DIVISION**
**BARNES, P. J.,**
**LAND and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 3, 2023**

# In the Court of Appeals of Georgia

A23A1156. JONES v. THE STATE.

WATKINS, Judge.

A jury found Jeremy Christopher Jones guilty of trafficking in methamphetamine. Following the denial of his motion for new trial, Jones appeals, challenging the sufficiency of the evidence. He also contends he received ineffective assistance of counsel. For reasons that follow, we affirm.

Viewed in the light most favorable to the verdict,[1] the evidence shows that Jones lived in the small town of Villanow. In December 2018, Lisa Jenkins — who resided temporarily in Villanow — asked Jones if he wanted to get some "free shit." Jenkins meant drugs, and she thought Jones understood her meaning. Jenkins did not

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

have a car, and she asked Jones to give her a ride. Jones agreed and borrowed his grandmother's car to drive Jenkins to Smyrna.

On the outskirts of Smyrna, Jenkins left Jones at a store while she drove to meet her methamphetamine supplier. After obtaining the drugs, Jenkins returned to the store to get Jones, and the two returned to Villanow. They went to a house that belonged to one of Jones's friends where the three used some of the methamphetamine. They realized that the methamphetamine was of poor quality, but Jones's friend thought he could still sell the contraband.

A few days later, the friend informed Jones that he could not sell the methamphetamine, and Jones passed the message along to Jenkins. Jenkins decided to return the drugs to the original supplier. Jones again borrowed his grandmother's car, and the two traveled to Smyrna. On the outskirts of town, Jenkins once again deposited Jones — this time at a gas station — before continuing to her supplier to exchange the methamphetamine for different drugs.

After completing the transaction, Jenkins picked up Jones and began driving back to Villanow. On the return journey, the car was stopped by law enforcement because the tag light was broken. Jenkins was unable to produce a driver's license, and she was asked to exit the car. An officer approached the passenger window to

speak with Jones, who was in the passenger seat. According to the officer, Jones offered up extraneous information, which the officer found peculiar. The officer also noticed that Jones had positioned his body in an unusual position with his legs extended, but his knees tightly together. The officer suspected Jones was hiding something under his legs, and he asked Jones for permission to search the car. Jones consented, and during the subsequent search, officers found a black bag on the floorboard of the passenger compartment. Inside the bag, officers found 117.760 grams of methamphetamine, plastic baggies, and a digital scale.

Both Jenkins and Jones were charged with trafficking in methamphetamine. Jenkins reached a plea deal, and she agreed to testify at Jones's trial. According to Jenkins, she did not specifically tell Jones that they were going to Smyrna to purchase drugs. And she equivocated when asked whether Jones ingested any of the methamphetamine following their return to Villanow. But Jenkins was impeached in this regard with her prior testimony at her plea hearing.

Jones testified on his own behalf and claimed that he thought he was giving Jenkins a ride to Smyrna to pick up her belongings from a former boyfriend. Jones's grandmother also testified and said that, when she retrieved her car, the back seat was

filled with women's clothing. The jury apparently discredited this testimony and found Jones guilty of trafficking in methamphetamine.

1. Jones challenges the sufficiency of the evidence, arguing that his mere presence in the vehicle in which the methamphetamine was found was insufficient to establish his guilt. We disagree.

On appeal, Jones no longer enjoys a presumption of innocence, and we view the evidence in the light most favorable to the jury's verdict.[2]

> [I]n evaluating the sufficiency of the evidence, we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt. The jury's verdict will be upheld, then, so long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case.[3]

Under OCGA § 16-13-30 (b), "it is unlawful for any person to manufacture, deliver, distribute, dispense, administer, sell, or possess with intent to distribute any controlled substance[,]" including methamphetamine. If a person possesses 28 grams

---

[2] See *Goforth v. State*, 360 Ga. App. 832, 834 (1) (861 SE2d 800) (2021).

[3] (Citations and punctuation omitted.) Id.

4

or more of methamphetamine, the offense constitutes trafficking.[4] Possession of the contraband may be either actual or constructive, and a person may jointly possess the contraband with another.[5]

> [A] person has actual possession of a thing if he knowingly has direct physical control of it at a given time. In addition, a person who — though not in actual possession — knowingly has both the power and intention at a given time to exercise dominion or control over a thing is then in constructive possession of it. Importantly, constructive possession must be based on a connection between the defendant and the object that is more than spatial proximity. As a result, when it is established wholly on circumstantial evidence, the law requires that the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused. Nevertheless, questions of reasonableness in this regard are generally decided by the jury.[6]

Here, the methamphetamine was found in a bag underneath Jones's feet. When an officer approached the car, Jones stretched his legs out in an awkward position to

---

[4] See OCGA § 16-13-31 (e).

[5] See *Nails v. State*, 357 Ga. App. 515, 520 (2) (a) (851 SE2d 144) (2020).

[6] (Citations and punctuation omitted.) *Alvarez-Maldonado v. State*, 359 Ga. App. 500, 503-504 (1) (859 SE2d 481) (2021).

obscure the bag at his feet. Accordingly, more than mere spatial proximity tied Jones to the contraband.[7]

Furthermore, under the facts of this case, the jury was authorized to find Jones guilty as a party to the crime of trafficking.[8] Although a defendant's mere presence in a car in which drugs are found may not be sufficient to establish guilt,

> evidence of a defendant's conduct prior to, during, and after the commission of a criminal act will authorize the defendant's conviction for commission of the criminal act if a jury could infer from the conduct that the defendant intentionally encouraged the commission of the criminal act.[9]

The evidence at trial showed that Jones drove Jenkins to Smyrna to procure methamphetamine. Jones introduced Jenkins to the man who tried to sell the contraband, and Jones either smoked methamphetamine or was present when methamphetamine was smoked. It was Jones who relayed the message to Jenkins that

---

[7] See *Tanksley v. State*, 327 Ga. App. 273, 274 (1) (758 SE2d 611) (2014) (evidence supporting the finding that defendant had constructive possession included defendant's attempt to hide the drugs); but see *Hill v. State*, 360 Ga. App. 143, 146-141 (860 SE2d 893) (2021) (holding that the circumstantial evidence was insufficient to demonstrate constructive possession).

[8] See *Sherrer v. State*, 289 Ga. App. 156, 160 (2) (656 SE2d 258) (2008).

[9] (Citation and punctuation omitted). *Nails*, 357 Ga. App. at 520-521 (2) (a).

the methamphetamine could not be sold after which Jones again drove Jenkins to Smyrna to exchange the contraband. Under these circumstances, the jury was authorized to find that Jones was a party to the crime of trafficking methamphetamine.[10]

2. In multiple sub-arguments, Jones asserts that his trial counsel rendered ineffective assistance. In order to establish a claim of ineffective assistance, Jones must meet a two-prong test: (1) he must prove that his lawyer's performance was deficient; and (2) he must show he was prejudiced by the deficiency. The first prong requires a showing that trial counsel "performed at trial in an objectively unreasonable way considering all the circumstances and in light of prevailing professional norms."[11] The defendant must overcome

> the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment. Decisions regarding trial tactics and strategy may form the basis for an

---

[10] See *Goforth*, 360 Ga. App. at 836 (1) (trafficking conviction affirmed where evidence showed that defendant "at the very least, participated and intentionally aided in the commission" of the offense). See also *Rainey v. State*, 319 Ga. App. 858, 860-861 (1) (a) (738 SE2d 685) (2013).

[11] (Punctuation omitted.) *Williams v. State*, 316 Ga. 304, 314-315 (5) (888 SE2d 60) (2023).

7

ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course."[12]

To establish the second prong of an ineffective assistance claim, Jones must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[13]

(a) As a threshold matter, we note that Jones lists twelve instances in which he claims his attorney performed deficiently. But Jones fails to support some of his claims with argument or citation of authority. Other claims are supported only by conclusory statements, and "mere conclusory statements are not the type of meaningful argument contemplated by our rules."[14] To the extent Jones has failed to support a specific argument, it may be deemed abandoned.[15] With this principle in mind, we consider Jones's ineffective claims to the extent they are supported with argument or citation of authority.

---

[12] (Citations and punctuation omitted.) Id. at 315.

[13] (Punctuation omitted.) Id.

[14] (Citation and punctuation omitted.) *Brittain v. State*, 329 Ga. App. 689, 704 (4) (a) (766 SE2d 106) (2014).

[15] See Court of Appeals Rule 25 (d) (1) (claims unsupported by argument or citation of authority may be deemed abandoned).

8

(b) In two related claims, Jones argues that his attorney was ineffective because the attorney is blind. Jones broadly asserts that interviewing potential jurors "is a complicated process which requires reading nuances and facial expressions, scanning their brief histories, and trying to track issues important for consideration." But Jones does not argue that any juror with troubling facial expressions was seated on the jury; he merely theorizes that his attorney's disability may have hampered his representation. Accordingly, Jones's argument in this regard is entirely speculative, "and mere speculation will not support a claim of ineffective assistance of counsel."[16]

Furthermore, at the hearing on Jones's motion for new trial, Jones's attorney testified that he has a sighted assistant who helps him at trial. Although Jones suggests on appeal that his attorney should have retained co-counsel or a "professional assistant" in order to assist at trial, there is no evidence whatsoever to show that Jones was prejudiced in any way by his attorney's condition.

(c) In multiple arguments, Jones maintains that his attorney was inadequately prepared for trial. He claims that his attorney only met with him twice, failed to review the transcript from Jenkins's plea hearing, and did not file a motion to

---

[16] (Citation and punctuation omitted.) *Green v. State*, 358 Ga. App. 843, 854-855 (7) (b) (856 SE2d 427) (2021).

suppress. But Jones makes no effort to demonstrate how any of these alleged shortcomings harmed him.[17] Under these circumstances, Jones has failed to show prejudice.[18]

(d) In two arguments, Jones claims his attorney was ineffective in failing to request that voir dire be recorded and thus failing to preserve his objections to a juror who was allegedly dismissed for cause. Jones's conclusory statements regarding these claims are insufficient to sustain his burden of demonstrating ineffective assistance.[19]

(e) Jones asserts that his attorney's cross-examination of Jenkins was inadequate as the attorney ignored Jenkins's attempts to exonerate Jones. After Jones's attorney confirmed that it had been Jenkins who planned to distribute the methamphetamine, the lawyer asked Jenkins if Jones had "[A]ny part of that plan?

---

[17] At the plea hearing, Jones's attorney could not recall whether he had read the plea transcript, but he testified that he likely did so. He also interviewed Jenkins prior to trial.

[18] See *Percell v. State*, 346 Ga. App. 219, 223 (4) (a) (816 SE2d 344) (2018) (holding that the defendant failed to demonstrate prejudice due to counsel's allegedly inadequate trial preparation).

[19] See, e. g., *Graves v. State*, 306 Ga. 485, 489-490 (2) (c) (831 SE2d 747) (2019) (prejudice not shown where voir dire was not transcribed); *Smith v. State*, 261 Ga. App. 25, 27-28 (3) (581 SE2d 673) (2003) (defendant failed to demonstrate prejudice arising from decision to proceed with panel of eleven jurors).

Did he assist you with that plan?" Jenkins responded, "There wasn't a discussion of any kind of plan for [Jones] to help me distribute anything whatsoever." The attorney then ended his cross-examination.

According to Jones, his attorney's failure to thoroughly cross-examine Jenkins constituted ineffective assistance. But at the hearing on the motion for new trial, Jones's attorney testified that once Jenkins accepted sole responsibility for trafficking the methamphetamine, he wanted to get her off the witness stand. And such "decisions about what questions to ask on cross-examination are quintessential trial strategy and will rarely constitute ineffective assistance of counsel."[20] Because counsel's decision to limit Jenkins's cross-examination was a reasonable trial strategy, it does not constitute ineffective assistance.[21]

(f) Jones argues that his attorney erred in having Jones take the stand and testify in his own defense. According to Jones, his attorney failed to appreciate that — by taking the stand — Jones would be subject to a thorough and sifting cross

---

[20] (Punctuation omitted.) *Morrison v. State*, 303 Ga. 120, 126 (5) (b) (810 SE2d 508) (2018).

[21] See id.

examination.[22] Even assuming that trial counsel was deficient in this regard, it was incumbent on Jones to show that the error was prejudicial to his defense.[23] His failure to do so is fatal to this ineffective assistance claim.[24]

(g) Finally, Jones alleges ineffective assistance based upon his attorney's failure to preserve his objections to jury charges, failure to request a charge on simple possession, and failure to review the State's jury charges prior to the charge conference. Again, Jones does not attempt to explain how he was prejudiced by these alleged errors. Under these circumstances, he has not established a claim of ineffective assistance.[25]

*Judgment affirmed. Barnes, P. J., and Land, J., concur.*

---

[22] See OCGA § 24-5-506 (b).

[23] See *Wood v. State*, 366 Ga. App. 305, 310-311 (1) (c) (v) (882 SE2d 50) (2022).

[24] See id.

[25] See *Anglin v. State*, 302 Ga. 333, 344 (8) (d) (806 SE2d 573) (2017); see also *Towry v. State*, 304 Ga. App. 139, 148 n.7 (695 SE2d 683) (2010) ("noting that mere conclusory statements are not the type of meaningful argument contemplated" by this Court's rules).