**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 12, 2018**

# In the Court of Appeals of Georgia

A18A0205. PERCELL v. THE STATE.

McFADDEN, Presiding Judge.

After a jury trial, Craig Edward Percell was convicted of family-violence aggravated battery, two counts of DUI, possession of marijuana, reckless driving, following too closely, failure to maintain lane, and possession of a drug-related object. The trial court denied his motion for new trial, and Percell appeals.

Percell argues that the evidence does not support the aggravated assault and aggravated battery verdicts the jury returned against him. Percell's argument is moot because those charges were merged with the family-violence aggravated battery conviction, which is supported by sufficient evidence. Percell argues that the trial court erred by denying his morning-of-trial motion for a continuance and by allowing the victim to testify in rebuttal since she had remained in the courtroom during the

trial, but those decisions were within the trial court's discretion. Finally, Percell argues that he received ineffective assistance of trial counsel, but he has failed to show both deficient performance and prejudice. So we affirm.

1. *Sufficiency of the evidence*.

Percell challenges the sufficiency of the evidence as to aggravated assault and aggravated battery. His challenge is moot because the trial court merged those counts into the family-violence aggravated battery conviction, which is supported by sufficient evidence.

In considering the sufficiency of the evidence supporting a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (citation omitted; emphasis in original). It is the function of the jury, not the reviewing court, to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the evidence. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, the jury's

verdict will be upheld." *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (citations and punctuation omitted).

So viewed, the record shows that Percell was in a relationship with the victim: they lived together and they are the parents of two children. On the day of the incident, Percell and the victim were arguing. The victim drove off from their residence with their infant daughter. She looked in her rearview mirror and saw Percell rapidly approaching in his vehicle. She feared for her life. The victim swerved her car into the adjacent lane to get out of the way, but Percell followed and rammed her. The victim's car spun out of control, hit a light pole, and rolled over The victim was evacuated to a hospital by helicopter. She remembered nothing that occurred after the collision until she awoke from a two-week coma. She fractured two vertebrae; broke her collar bone; suffered nerve damage to her arm, rendering her arm useless; punctured her spleen; her lungs collapsed; and she now has a stent in a main artery.

After the victim left the hospital and while Percell was out on bond, they reconciled. Once again they began arguing, and Percell slapped the victim. He told her, "You of all people should know I don't play." Percell's comment made the victim believe that Percell had intentionally rammed her car.

3

A bystander saw the two vehicles speeding, then the victim driving into a turning lane, and Percell following into that lane and hitting the victim's car. The bystander walked to the wreck to see if she could help. The victim was unconscious and unresponsive. She regained consciousness and began screaming that Percell was trying to kill her.

A Georgia State Patrol trooper who worked on the specialized collision reconstruction team that investigated the accident testified that he determined that Percell's truck struck the victim's car, causing the car to flip, while he was driving more than 56 miles per hour. There was no evidence that the driver of either vehicle tried to brake before the impact. The team determined that Percell had to have driven into the lane of travel into which the victim had swerved in order to strike the victim's car.

At the scene, an officer arrested Percell after field sobriety tests and a roadside breath test indicated that he was under the influence of alcohol. A GBI forensic toxicologist testified that six hours after the accident, Percell's blood tested positive for the presence of marijuana and alcohol, and that at the time of the accident, Percell's blood-alcohol level would have been .135. Officers found marijuana and a pipe in Percell's car.

Percell had various explanations for what happened. He said that he came upon the victim and stopped when he saw that she had been in an accident and that the damage to his truck had occurred previously. Later, he said that he came upon the victim, who looked as if she were swatting a bee as she drove, and he may have bumped her. At trial, Percell testified that he hit the victim's car when he took his eyes off the road as he leaned down to answer his phone and that he had no intention of hitting the victim's vehicle. None of Percell's explanations were consistent with the evidence from the scene.

Percell argues that the aggravated assault conviction cannot be sustained because there is insufficient evidence that any of his acts placed the victim "in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a) (2). See also OCGA § 16-5-21. Percell also argues that the aggravated battery conviction cannot be sustained because there is insufficient evidence that he acted with malice. See OCGA § 16-5-24 (a). Percell's arguments are "moot because the trial court merged [those] count[s] into [the family-violence aggravated battery] count for purposes of sentencing." *Lupoe v. State*, 284 Ga. 576, 577 (1) n.2 (669 SE2d 133) (2008) (citation and punctuation omitted). And the evidence supports the family-violence aggravated battery conviction.

5

To convict Percell of family-violence aggravated battery, the state had to prove that Percell "maliciously cause[d] bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof" and that the aggravated battery was "committed between . . . persons who are parents of the same child [or] persons excluding siblings living or formerly living in the same household. . . ." OCGA § 16-5-24 (a) and (g). The evidence related above authorized a rational jury to find Percell guilty beyond a reasonable doubt of family-violence aggravated battery. *Jackson*, 443 U. S. at 319 (III) (B).

2. *Denial of request for continuance*.

Percell argues that the trial court erred by denying his request for a continuance to retain a private attorney and by failing to allow him to explain why he wanted to terminate appointed counsel's services. The trial court did not abuse his discretion.

On the morning of trial, Percell requested a continuance so that he could hire private counsel. The trial court denied the motion on the ground that Percell had had adequate time to hire a lawyer. The court noted that the case had been pending for months, that he already once had continued the case and disbanded jurors, and that

6

it appeared to the court that appointed counsel had worked diligently on Percell's case and was ready to proceed.

OCGA § 17-8-20 requires a party requesting a continuance to "show that he has used due diligence." "Whether a particular defendant has exercised reasonable diligence in procuring counsel is a factual question, and the grant or denial of a request for continuance on grounds of absence of retained counsel is a decision within the sound discretion of the trial judge, reversible only for an abuse of that discretion." *Flowers v. State*, 275 Ga. 592, 594 (2) (571 SE2d 381) (2002) (citation and punctuation omitted). Percell has not shown that the trial court abused his discretion. As for Percell's argument that the trial court did not give him the opportunity to explain why he wanted to fire appointed counsel, the record does not show that he sought such an opportunity.

3. *Allowing the victim to remain in the courtroom through the trial and to testify as a rebuttal witness*.

Percell argues that the trial court erred by allowing the victim to remain in the courtroom for the entire trial and then testify as a rebuttal witness after Percell testified. He has not shown that the trial court abused his discretion.

Under Georgia law, the victim could remain in the courtroom. OCGA §§ 17-17-1 (3), 17-17-9, 24-6-616. Further, allowing her to testify in rebuttal "was fully within the trial court's discretion and does not constitute reversible error." *Shepherd v. State*, 245 Ga. App. 386, 388 (2) (537 SE2d 777) (2000) (citation omitted) (decided under former OCGA § 24-9-61.1). Even had the victim been subject to the rule of sequestration, "[i]n criminal cases, the violation of the rule of sequestration by any witness either for the defense or for the prosecution goes to the credibility rather than to the admissibility of the witness' testimony." *Blanchard v. State*, 247 Ga. 415, 417 (1) (276 SE2d 593) (1981) (citation omitted).

4. *Effective assistance of counsel*.

Percell argues that he received ineffective assistance of trial counsel. He challenges trial counsel's trial preparation, failure to move for a *Jackson-Denno* hearing, and failure to make certain objections. To prevail on his claim, Percell

> must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, [Percell] must show that his lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). And

8

to prove that he was prejudiced by the performance of his lawyer, [Percell] must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694 (III) (B). This burden is a heavy one, and [Percell] has not met it.

*Robinson v. State*, __ Ga. __ (3) (__ SE2d __) (Case No. S17A1903, decided March 15, 2018) (citation omitted). To show prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012) (citation omitted). "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Lawrence v. State*, 286 Ga. 533, 533-534 (690 SE2d 801) (2010).

(a) *Inadequate preparation*.

Percell argues that trial counsel failed to visit the accident scene sufficiently early; did not investigate businesses near the accident scene for potential witnesses or video; did not talk with any of the known witnesses except the victim; and did not seek outside assistance in interpreting the accident reconstruction report. But he "provides absolutely no argument as to how the outcome would have been different

absent these deficiencies." *Roberson v. State*, 327 Ga. App. 804, 809 (3) (761 SE2d 361) (2014). "Therefore, even assuming without deciding that trial counsel's performance was deficient, [Percell] fails to demonstrate prejudice. . . . Mere speculation about what the evidence would have shown had it actually been obtained does not satisfy the requirement of showing prejudice." *Howard v. State*, 298 Ga. 396, 399 (2) (782 SE2d 255) (2016).

(b) *Failure to move for a* Jackson-Denno *hearing*.

Percell points to counsel's failure to move for a *Jackson-Denno* hearing to determine the voluntariness and admissibility of Percell's statement to law enforcement. See *Jackson v. Denno*, 378 U.S. 368 (84 SCt 1774, 12 LE2d 908) (1964). An investigator with the district attorney's office, who was involved in interviewing Percell, testified about the circumstances of Percell waiving his rights and giving his statement. "Counsel on appeal has not demonstrated [— or even argued —] that the statement made by (Percell) was inadmissible and we note that the trial court charged the jury fully on the issue of determining whether (Percell) gave the statement freely and voluntarily. The alleged deficiencies would not have changed the outcome." *Hubbard v. State*, 224 Ga. App. 614, 615 (481 SE2d 601) (1997) (citations and punctuation omitted).

(c) *Failure to make objections.*

(i) *Failure to object to testimony that evidence was consistent with collision being intentional.*

Percell argues that trial counsel was ineffective for failing to object to several instances of law enforcement witnesses testifying that the evidence of the collision was consistent with it being intentional because the testimony was improper expert opinion on the ultimate issue. We do not find reversible error.

The new Evidence Code eliminates the former ultimate-issue rule "except as to certain expert witness testimony" as set out in OCGA § 24-7-704 (b). *State v. Cooper*, 324 Ga. App. 32, 34 (1) n.1 (749 SE2d 35) (2013) ("Under the new Evidence Code, except as to certain expert witness testimony, 'testimony in the form of an opinion or inference otherwise admissible shall not be objectionable because it embraces an ultimate issue to be decided by the trier of fact.' OCGA § 24-7-704 (a). See generally OCGA § 24-7-701 (a) (setting forth rules for lay witness testimony regarding the witness's opinions and inferences)."). See also Ronald L. Carlson & Michael Scott Carlson, Carlson on Evidence, 426-428 (6th ed. 2018).

As for expert witness testimony, OCGA § 24-7-704 (b) provides,

11

No expert witness testifying with respect to the mental state or condition of an accused in a criminal proceeding shall state an opinion or inference as to whether the accused did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

Contrary to the state's argument, the statute applies to all criminal proceedings, not just those in which a defendant's competency is at issue. See *Eller v. State*, __ Ga. __ (IV) (B) (__ SE2d __) (Case No. S17A1549, decided March 5, 2018) ("In criminal proceedings, expert witnesses 'testifying with respect to the mental state or condition of an accused' cannot 'state an opinion or inference as to whether the accused did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto' because '[s]uch ultimate issues are matters for the trier of fact alone.' OCGA § 24-7-704."). It applies only to expert witnesses. Id. (OCGA § 24-7-704 (b) "forbids *experts* from expressly stating a conclusion that the accused did or did not have the requisite intent.") (emphasis added). See also *United States v. Augustin*, 661 F3d 1105, 1123 (V) (A) (11th Cir. 2011) ("*(E)xpert testimony expressly stating an opinion as to the defendant's state of mind at the time of the offense is barred by rule 704(b).*") (citation and punctuation omitted; emphasis added); *United States v. Kohring*, 637 F3d 895, 911 (5) (A) (9th Cir. 2011) ("Rule

12

704(b) applies only to *expert* witnesses.") (emphasis in original). Here, although the law enforcement witnesses were not designated as experts, the parties agree that they testified as experts. So OCGA § 24-7-704 (b) applies.

Percell points to three examples of testimony that he contends violates OCGA § 24-7-704 (b). In one instance, a witness testified that Percell's "views were inconsistent and was not consistent with what the evidence was showing. The evidence was suggesting that there might have been an intentional act." In a second instance, the prosecutor asked a witness if the evidence was "consistent with the intent -- specific intent of striking [the victim's] vehicle?" and the witness responded, "Yes, sir." In a third instance, the prosecutor asked a witness, "[T]he reason that you questioned [Percell] about there being an argument is because this was obviously an intentional act based on the evidence?" The witness responded, "That's correct."

Pretermitting whether counsel should have objected to this testimony for violating OCGA § 24-7-704 (b), we find any error to be harmless in light of other evidence of intent, including the victim's testimony that Percell intended to strike her vehicle, and the court's instructions to the jury.

The victim — to whom OCGA § 24-7-704 (b) does not apply — testified that she "swerved over" to get out of the way, but Percell followed in order to hit her. She

13

testified that in their post-accident fight, Percell slapped her and told her, "You of all people should know I don't play," from which she concluded that "this wreck was not a[n] accident. It was intentional. . . ." She testified about a prior incident where Percell had chased her car while he was driving his truck and afterwards told her that he could have killed her.

The bystander testified that she saw Percell follow the victim into her lane before suddenly hitting the back of her vehicle with his truck. The bystander testified that when the victim regained consciousness, she began screaming that Percell was trying to kill her.

The trial court thoroughly instructed the jury that intent was an essential element of the crimes, which the state had the burden of proving beyond a reasonable doubt; that the jury could infer intent from the circumstances or from Percell's acts, but whether to draw that inference was solely within the jury's discretion; that Percell would not be presumed to have acted with criminal intent; that the state had the burden of disproving accident; and that should the jury determine that the incident resulted from accident, then the jury should acquit.

Given these circumstances, Percell has failed to demonstrate a substantial likelihood that the result of his trial would have been different had counsel objected

14

to the challenged testimony. See *Hill*, 291 Ga. at 164 (4). See also *Lopez v. State*, 267 Ga. App. 178, 180-181 (3) (598 SE2d 898) (2004) (any error in allowing an officer to give opinion testimony that defendant accelerating and hitting another officer's car was not accidental was harmless as there was ample evidence to support the inference).

(ii) *Failure to object to investigator's testimony that Percell appeared regretful*.

Percell argues that counsel should have objected to an investigator's testimony that Percell appeared angry and regretful during his interview. He argues that the testimony was speculative. Percell has not demonstrated a substantial likelihood that the result of his trial would have been different had counsel objected to this testimony.

(iii) *Failure to object to victim's hearsay testimony.*

Percell argues that counsel was ineffective for failing to object to the victim's hearsay testimony "regarding the many statements that were made by others after the fact about what they saw and heard while she was unconscious or unaware." This claim is "deemed abandoned because [Percell] does not support [it] with argument or citation to authority, and mere conclusory statements are not the type of meaningful

15

argument contemplated by Court of Appeals Rule 25 (a) (3)." *Davenport v. State*, 308 Ga. App. 140, 156 (2) (e) (706 SE2d 757) (2011) (citations and punctuation omitted).

(iv) *Failure to object when the state recalled the victim.*

Percell argues that counsel was ineffective for failing to object when the victim was recalled to testify as a rebuttal witness. As described in Division 3, it was within the trial court's discretion to allow the victim to testify as a rebuttal witness. "Ineffectiveness of trial counsel cannot be based on a failure to make meritless objections." *Horner v. State*, 257 Ga. App. 12, 18 (6) (570 SE2d 94) (2002).

*Judgment affirmed. Ray and Rickman, JJ., concur.*