**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**September 8, 2020**

# In the Court of Appeals of Georgia

A20A1013. CLARKE v. THE STATE.

BROWN, Judge.

Following a jury trial, Oniel Clarke was convicted of two counts each of theft by receiving stolen property, OCGA § 16-8-7, and possession of a motor vehicle with identification removed, OCGA § 40-4-22. Clarke appeals from the judgment of conviction and the denial of his motion for new trial, contending that the trial court erred in admitting (1) other act evidence that Clarke attempted to purchase a vehicle from a Florida dealership in 2004, using fake identification; (2) evidence of three other "stolen" vehicles belonging to Clarke that were not the subject of the indictment; and (3) a recorded interview between Clarke and law enforcement when the State failed to meet its disclosure obligations under OCGA § 17-16-4. Clarke also contends that he received ineffective assistance of counsel. We affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.

(Citation and punctuation omitted.) *McKinney v. State*, 276 Ga. App. 75 (622 SE2d 427) (2005). So viewed, the evidence shows that on August 7, 2013, Barrow County and Gwinnett County law enforcement received calls from a special agent with the National Insurance Crime Bureau about a 2003 Infiniti G35 with a "cloned" vehicle identification number (VIN). Law enforcement confirmed that the VIN on the Infiniti was false; that the Infiniti had been reported stolen in Gwinnett County in 2007; that Clarke was listed as the insured on the Infiniti; and that two additional vehicles — a 2008 Lexus LX570 and a 2008 BMW 550i — were insured in his name. A Gwinnett County investigator checked the VINs on the Lexus and BMW 550i, and both "check digit[s] came back incorrect."[1] When Gwinnett County police went to Clarke's

---

[1] The investigator explained that a check digit is "a formula that you can put a VIN into, and it gives you what the check digit, which is the ninth digit in a VIN, what it should be, and if it's incorrect then the VIN is wrong." He also testified that the false VINs were "plainly evident," explaining that while federal VIN stickers are "self-destructing," meaning they cannot be removed and used again, the stickers on

residence the following day to investigate further, Clarke drove up in the Lexus and the BMW 550i was in his garage; police confirmed that the VINs on both vehicles had been falsified, and that both vehicles had been reported stolen. The Lexus had been reported stolen from an Illinois car dealership on November 15, 2008, and the BMW 550i had been reported stolen from a Massachusetts car dealership in 2010. Both vehicles had Pennsylvania tags, but the state name was covered with black electrical tape.[2] Clarke told police that he purchased the Lexus from a dealership in New York for $24,000, and the BMW 550i from an auto collision repair business of which he was a partner for $42,000. Testimony at trial established that the Lexus and BMW 550i were valued at $73,954 and $39,275, respectively. Clarke could not provide any paperwork for the BMW 550i, and told police that he submitted all paperwork concerning the Lexus to the Pennsylvania Department of Transportation ("the PDOT"). Police impounded the two vehicles, and arrested Clarke.

---

the Lexus and BMW 550i were clearly printed on "what appeared to be a home printer."

[2] The investigator explained that in states other than Georgia, when an officer runs a tag number, they are required to manually enter the state name in order to get a return of information on the vehicle.

3

Investigators subsequently discovered that both vehicles were registered in Pennsylvania, and that Clarke had submitted paperwork to the PDOT for verification of the VINs on both vehicles.[3] The paperwork submitted to the PDOT for each vehicle had a purchase date that preceded the date of theft. With regard to the Lexus, an alleged bill of sale reflected that it was purchased for $24,000 from Hennessy Lexus of Atlanta on August 24, 2008, three months before the vehicle was reported stolen, and that Clarke submitted the request for "correction or verification" of the VIN on March 17, 2009. The request listed the "cloned VIN." The sales manager at Hennessy Lexus of Atlanta testified that the bill of sale was "definitely" not a "bill of sale from our dealership"; that the sales person listed on the document had never worked at the dealership; and that the serial number on the bill of sale did not match up as having been in the dealership's inventory at any time.

With regard to the BMW 550i, Clarke submitted to the PDOT, a Georgia Certificate of Title, which lists the purchase date as July 26, 2008, two years prior to

---

[3] The investigator explained that a VIN verification occurs when "somebody goes to a state to register a vehicle, if there's an issue with a VIN number, ownership records, . . . the [s]tate requires the individual to get a VIN verification done to verify the VIN and that the vehicle is not stolen." Georgia requires that a law enforcement officer verify a VIN; Pennsylvania does not, and Clarke's forms were verified by a mechanic.

the theft date of the vehicle; however, the Georgia Department of Revenue did not have any record of the title because it had never been registered in Georgia. Clarke also submitted to the PDOT a VIN verification form, which listed the cloned VIN. On November 26, 2016, the PDOT sent to Clarke a letter stating that his application to register the BMW 550i could not be processed because "an incorrect [VIN] was recorded on the out of state proof of ownership. Legible tracings of both the [VIN] plate affixed to the vehicle, as well as the engine number plate are required."

1. In his first and third enumerations of error, Clarke contends that the trial court abused its discretion under OCGA § 24-4-404 (b) ("Rule 404 (b)") by admitting (a) evidence of his Florida convictions as well as (b) evidence of three additional vehicles registered to him, all of which had cloned VINs. We disagree.

Under Rule 404 (b), "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith." However,

> such other-act evidence is admissible for other purposes, including to prove intent, motive, and absence of mistake or accident. The party offering evidence under Rule 404 (b) must show three things: (1) that the evidence is relevant to an issue in the case other than the defendant's character; (2) that the probative value of the evidence is not substantially outweighed by its undue prejudice; and (3) that there is sufficient proof

5

for a jury to find by a preponderance of the evidence that the defendant committed the other act.

(Citation and punctuation omitted.) *Strong v. State*, ___ Ga. ___ (2) (a) (Case No. S20A0270, decided June 29, 2020). As to the first required showing, OCGA § 24-4-401 defines "relevant evidence" as that evidence which "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. "This is a binary question — evidence is either relevant or it is not." *Strong*, ___ Ga. at ___ (2) (a). OCGA § 24-4-403 ("Rule 403") governs the second required showing and provides that, "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403 "is designed to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." (Citation and punctuation omitted.) *Strong*, ___ Ga. at ___ (2) (a). "The third part of the test is a preliminary question of fact for the trial court. Other acts evidence may be admitted if the court concludes that the evidence is sufficient for the jury to find by a preponderance of the evidence that the other act

6

was committed." (Citation and punctuation omitted.) Id. "A trial court's decision to admit other acts evidence under [Rule 404 (b)] will be overturned only where this is a clear abuse of discretion." *Sloan v. State*, 351 Ga. App. 199, 208 (2) (e) (830 SE2d 571) (2019).

(a) *2004 Florida conviction.* Approximately two weeks before trial, the State filed a notice of intent to introduce evidence of prior bad acts, namely Clarke's 2004 nolo contendere plea in Florida to second degree grand theft, criminal use of personal identification information, and possession of fictitious driver's license or identification card. During a hearing on the matter, the State argued that the evidence was relevant to show Clarke's knowledge, intent, absence of mistake, motive, opportunity, and planning. Specifically, the State argued that the evidence showed that Clarke knows how to use fraud and deceit, as well as fake paperwork or other documentation, to obtain a vehicle that does not belong to him; that Clarke was not just an innocent victim, purchasing vehicles that he had no "clue" were stolen; and all the vehicles were high-end vehicles. Clarke objected, arguing that the evidence was prejudicial and in no way relevant; the State was simply offering it to impugn his character. In support of these arguments, Clarke pointed out that the convictions were 13 years old, with "no real similarities" to the charges in this case because they did

7

not involve the use of false paperwork, or receipt of a stolen vehicle. The trial court ruled that the evidence was admissible for the limited purposes of knowledge, intent, and absence of mistake or plan, but not to prove opportunity or motive, and gave a limiting instruction before the evidence was admitted.

At trial, a police officer with the City of Plantation, Florida, testified that on January 3, 2004, he was called to an Acura dealership because Clarke was attempting to purchase a 2004 Acura TL, using a New York driver's license in the name of Alan Curry, but containing Clarke's photograph. Clarke had signed a credit application and purchase agreement using Alan Curry's name, social security number, and address. Police searched Clarke's vehicle and found a second New York driver's license in another name, which turned out to be fake. Police arrested Clarke, and later determined that Alan Curry was a real person. The State introduced a certified copy of the convictions.

On appeal, Clarke argues that the evidence served little legitimate purpose other than to place his character in issue in violation of Rule 404 (b). He claims that the prior crimes were substantially different from the charges here and too remote in time to be relevant. We are not persuaded that the trial court abused its discretion in

this case when it admitted the prior convictions to prove knowledge, intent, and absence of mistake or plan.

First, Clarke pleaded not guilty, and sought to refute the State's evidence of intent by claiming that the evidence showed that he had properly purchased, registered, insured, and titled the Lexus and BMW 550i, and legitimately financed the Lexus. By doing so, Clarke "put his intent at issue in this case." *Olds v. State*, 340 Ga. App. 401, 404 (1) (a) (797 SE2d 661) (2017). See *Naples v. State*, 308 Ga. 43, 51 (2) (838 SE2d 780) (2020) ("a defendant who enters a not guilty plea makes intent a material issue") (citation and punctuation omitted). Second, contrary to Clarke's contention that the prior crimes and the instant crimes were not sufficiently similar, all involved Clarke acquiring or attempting to acquire high-end vehicles through the use of fraud or deceit. Lastly, while "temporal remoteness is an important factor to be considered when determining whether other acts evidence should be admitted, because it depreciates the probative value of the evidence," standing alone, it is not a grounds for automatically excluding otherwise relevant and admissible evidence.

9

*Harvey v. State*, 344 Ga. App. 761, 770 (2) (a) (ii) (811 SE2d 479) (2018). With respect to temporal remoteness, this Court has noted that the Eleventh Circuit[4]

> has refrained from adopting a bright-line rule . . . because decisions as to impermissible remoteness are so fact-specific that a generally applicable litmus test would be of dubious value. Accordingly, the [a]ppellant bears a heavy burden in demonstrating an abuse of the court's broad discretion in determining if an extrinsic offense is too remote to be probative.

(Citation and punctuation omitted.) Id. In this case, the trial court did not abuse its discretion when it admitted the Florida convictions. See *Chase v. State*, 337 Ga. App. 449, 455 (3) (a) (787 SE2d 802) (2016) (in prosecution for impersonating an officer, evidence of defendant's prior convictions five years prior for financial identity fraud and forgery admissible to prove intent — to obtain an advantage through misrepresentation or use of someone else's identifying information). See also *Harvey*, 344 Ga. App. at (2) (a) (ii) (no abuse of discretion in admitting 1990 and 1996 burglary and theft by receiving convictions in case charging defendant with committing burglary and theft by taking in 2014). "Although the evidence was

---

[4] In construing and applying Rules of Evidence such as Rule 404 (b), the appellate courts of this State look for guidance in the decisions of the United States Supreme Court and the Eleventh Circuit. See *Olds*, 299 Ga. at 69 (2).

10

prejudicial, as almost all evidence presented by the State will be, we agree with the trial court that on balance any such prejudice did not substantially outweigh the probative value of the evidence in this case." (Citation and punctuation omitted.) *Harris v. State*, 338 Ga. App. 778, 783 (792 SE2d 409) (2016).

(b) *Three other "stolen" vehicles*.[5] At trial, an agent with the National Insurance Crime Bureau testified that he received a call on August 7, 2013, from Clarke's insurer, Liberty Mutual, raising suspicion about the VIN on a 2003 Infiniti G35 owned by Clarke, that was at a body shop in Barrow County. When the agent inspected the car, he confirmed that the VIN was false and that the vehicle had been stolen. The agent reported the vehicle to Gwinnett County police, who confirmed that there had been no reported recovery of the vehicle, but that the vehicle was located in Barrow County. The agent notified Barrow County police that a stolen car was in their jurisdiction. A Barrow County officer then testified about how she became involved in the "VIN verification" of the Infiniti, explaining that "any time there was a VIN verification necessary within the county, an investigator or an officer . . .

---

[5] In his brief, Clarke challenges the admission of evidence concerning three "allegedly *stolen* vehicles." (Emphasis supplied.) While there was evidence presented at trial that one of the vehicles (the Infiniti) was reported stolen, there was no evidence that the other two (the Toyota Camry and BMW M5) were reported stolen. See discussion, infra.

11

responds to that call." As the officer was explaining the suspicious nature of the VIN plate on the Infiniti, Clarke's trial counsel objected on the ground that the Infiniti was not part of the indictment. The State explained that the Barrow County officer was discussing the Infiniti in order to explain how Gwinnett County eventually became involved in the investigation which led to the charges in the instant case.[6] The trial court gave a limiting instruction, instructing the jury that the Infiniti was not part of the indictment and that "[t]he limited purpose of the testimony that is being brought to you at this point in the case is to advise you as to how Mr. Clarke came to the attention of Gwinnett County law enforcement." The Barrow County officer then explained how her investigation led to the discovery that the Infiniti had been stolen in 2007, and that two other vehicles — the Lexus and BMW 550i — insured by Liberty Mutual, and owned by Clarke and located in Gwinnett County, did not conform with guidelines for VINs. At that point, the officer contacted Gwinnett County police because she did not have jurisdiction over the Lexus and BMW 550i.

A Gwinnett County investigator then detailed Gwinnett County's investigation, testifying that he contacted the PDOT at Clarke's suggestion in order to obtain

---

[6] In its order denying Clarke's motion for new trial, the trial court implied that evidence concerning the Infiniti was intrinsic to the charged offenses.

12

registration and ownership records for all vehicles associated with Clarke. When the State attempted to tender paperwork concerning the Infiniti, defense counsel objected on the basis of relevance. The State countered that the documents were relevant to prove that Clarke "knew or should have known the [Lexus and BMW 550i] were stolen. Multiple instances of a correction of VIN form were submitted to the [PDOT]." The State pointed out that while one instance of the submission of a VIN correction form might be a mistake, numerous instances would cause "a reasonable person [to] know that those vehicles are stolen." The State also advised the trial court that it planned to tender as evidence additional VIN correction forms submitted to the PDOT referencing a Toyota Camry and a BMW M5, which also showed Clarke's knowledge and intent. The State argued that the documents were not Rule 404 (b) evidence, but simply part of the Gwinnett County investigation, and that the documents had been provided as part of discovery. Defense counsel reiterated his objection, and moved for a mistrial, arguing that the State had not filed a notice of intent to introduce evidence as to any of these vehicles/other acts, and the trial court had not been asked prior to trial to make an admissibility determination; defense counsel did not contest the State's claim that the documents were included in discovery.

13

The trial court denied the motion for mistrial and admitted the evidence under Rule 404 (b) for purposes of showing knowledge or absence of mistake, noting as well that evidence regarding the Infiniti would have come in under Rule 404 (b) because Clarke was charged in Barrow County with theft by receiving that vehicle. The Gwinnett County investigator then resumed testifying, confirming that he received documents from the PDOT concerning two other vehicles owned by Clarke, a Toyota Camry and a BMW M5. During its general charge, the trial court instructed the jury on the limited purpose of the evidence.

Without citing to any authority in support, Clarke contends on appeal that "admission of the prejudicial evidence concerning the three (3) additional vehicles with altered VINs without the benefit of a 404 (b) motion, notice or formal hearing, impermissibly put [his] character in issue."[7] We disagree.

---

[7] Because Clarke did not seek a specific ruling as to whether the Rule 404 (b) notice was unreasonable, he has waived this claim on appeal. See *Lowery v. State*, 347 Ga. App. 26, 36 (3) (a) (815 SE2d 625) (2018) (noting that counsel never sought a specific ruling on objection to timeliness of Rule 404 (b) notice, and finding that defendant waived issue on appeal because counsel failed to raise a valid objection). Additionally, he fails to offer any meaningful argument on appeal as to how the State's omission harmed or prejudiced his defense, See *Blevins v. State*, 343 Ga. App. 539, 546 (2) (c) (808 SE2d 740) (2017) (error harmless where defendant failed to explain how he was prejudiced by State's lack of notice of intent to introduce other acts evidence), overruled on other grounds, *McElrath v. State*, 308 Ga. 104 (839 SE2d 573) (2020).

14

(i) *Infiniti*. Rule 404 (b) does not apply to intrinsic evidence. See *Clark v. State*, 306 Ga. 367, 374 (4) (829 SE2d 306) (2019). See also *Satterfield v. State*, 339 Ga. App. 15, 19 (1) (a) (792 SE2d 451) (2016); *Baughns v. State*, 335 Ga. App. 600, 602 (1) (782 SE2d 494) (2016).

> Evidence is intrinsic when it is (1) an uncharged offense arising from the same transaction or series of transactions as the charged offense; (2) necessary to complete the story of the crime; or (3) inextricably intertwined with the evidence regarding the charged offense. Evidence that explains the context of the crime is admissible if it forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.

(Citation and punctuation omitted.) *Clark*, 306 Ga. at 374 (4). See also *Parham v. State*, ___ Ga. App. ___ (2) (a) (Case No. A20A0229, decided June 23, 2020) (evidence is intrinsic where it is a "link in the chain of events leading up to [the defendant's] arrest and complete[s] the story of the crimes for the jury") (punctuation omitted). However, intrinsic evidence must satisfy Rule 403. See *Williams v. State*, 302 Ga. 474, 485 (IV) (d) (807 SE2d 350) (2017). Because Rule 403 and Rule 404 were borrowed from the Federal Rules of Evidence, "our interpretation of these provisions is guided by the decisions of the federal appellate courts, especially the

15

United States Supreme Court and the Eleventh Circuit." *Brewner v. State*, 302 Ga. 6, 13 (III) (804 SE2d 94) (2017).

The Eleventh Circuit "repeatedly has held that evidence of uncharged conduct that is part of the same scheme or series of transactions and uses the same modus operandi as the charged offenses is admissible as intrinsic evidence outside the scope of Rule 404 (b)." *United States v. Ford*, 784 F3d 1386, 1394 (2) (11th Cir. 2015). The Eleventh Circuit has applied this definition of intrinsic evidence to affirm the admission of (a) evidence explaining how and why a government agency investigation led to defendants, as well as (b) background evidence regarding police investigations. See, e.g., *United States v. Parnell*, 32 FSupp.3d 1300, 1307 (II) (c) (i) (M.D. Ga., 2014) (in prosecution involving introduction of adulterated peanut butter into interstate commerce, evidence of salmonella illnesses admissible because inextricably intertwined with the crimes indicted, provided context to the offenses, and explained how and why government agencies began the investigation that led to defendants); *United States v. Khawaja*, No. 8:11-CR-404-17AEP, 2012 WL 124098, at *2 (M.D. Fla. Jan. 17, 2012) (investigation of defendant for identity theft and tax fraud, which included undercover visit to defendant's shop, admissible as intrinsic evidence because linked in time and circumstance, and led to discovery of shotgun

16

for which defendant was charged as felon in possession of firearms and ammunition); *United States v. Hooks*, 147 Fed.Appx. 956, 957 (I) (11th Cir. 2005) (background information regarding police investigation into co-defendants admissible primarily because it explained why narcotics agents were present at the bus station when defendant arrived carrying drugs). The *Parnell* court notably explained that without such background information, "the jury would be invited to speculate about the background to the prosecution." *Parnell*, 32 FSupp.3d at 1307 (II) (c) (i). And, that "whatever prejudicial effect may result from such evidence can be mitigated by a cautionary instruction." Id. at 1308 (II) (c) (i).

Similarly, in this case, evidence concerning the Infiniti was intrinsic because it explained how and why Gwinnett County officers were led to Clarke, and what prompted them to suspect that Clarke was in possession of two high-end stolen vehicles with altered VINs. Without such evidence, the jury would have been left to form their own story as to why Gwinnett County officers randomly appeared at Clarke's home inquiring about his vehicles.

Moreover, to the extent Clarke argues that the evidence should have been excluded under Rule 403, we disagree. Under the circumstances, although the evidence may have incidentally placed Clarke's character at issue, its probative value

17

was not substantially outweighed by the danger of unfair prejudice. See OCGA § 24-4-403. Accordingly, the trial court did not abuse its discretion in admitting the evidence. See *Espinosa v. State*, 352 Ga. App. 698, 705 (3) (b) (834 SE2d 558) (2019). And, because the evidence is intrinsic and not subject to the limitations and prohibition on "other acts" evidence found in Rule 404 (b), we need not consider Clarke's contention that it was admitted without the benefit of a 404 (b) motion, notice or formal hearing, and impermissibly put his character in issue. See *Johnson*, 348 Ga. App. at 835 (1).

(ii) *Toyota Camry and BMW M5*. With regard to the admission of this evidence, we note that Clarke does not state how any error was preserved for consideration; in his brief, he refers only to the pages in the transcript where defense counsel objected to admission of evidence concerning the Infiniti. See Court of Appeals Rule 25 (a) (1) (appellant's brief shall consist of "a statement of the method by which each enumeration of error was preserved for consideration"). We note further that during the motion for new trial hearing, appellate counsel repeatedly questioned trial counsel about whether he objected to the evidence and counsel "admitted" that he did not make an objection in front of the jury. In his appellate brief, Clarke also argues that trial counsel was ineffective for failing to object to

evidence regarding the Camry and BMW M5. Notwithstanding Clarke's violation of our rules, and his contradictory position as to whether counsel objected to the evidence, we have fully examined the record and find that trial counsel did in fact properly object to admission of this evidence.

As set out in Division 1 (a), supra, Clarke pleaded not guilty in this case, and claimed that he had no intent to commit a crime, but was an unwitting victim as evidenced by the fact that he properly purchased, registered, insured, and titled both the BMW 550i and the Lexus, and legitimately financed the Lexus. Clarke also requested, and the trial court gave, a charge on claim of right.[8] With regard to the

_____

[8] The trial court charged as follows:

It is a defense to a charge of theft by receiving that the defendant was unaware that the property was that of another; or acted under an honest claim of right to the property involved or under a right to acquire or dispose of it. Should you find from the evidence in this case that the defendant acted under such claim of right, just as I have instructed you, then it would be your duty to acquit the defendant. The burden of proof rests upon the State to prove beyond a reasonable doubt that the defendant did not act under an honest claim of right to the property and that the defendant was aware that the property was that of another person. . . .

admission of other act evidence for the purpose of showing knowledge, this Court has explained that

> a defendant's knowledge may be at issue where it is an element of the charged crime; that is, when knowledge itself is part of the statutory definition of the crime, and thus must be proven by the prosecution. Knowledge is also properly in issue when the defendant claims that he or she was unaware that a criminal act was being perpetrated. In such cases, the hypothesis justifying the admission of other-acts evidence is similar to that invoked with intent: the likelihood that repeated instances of behavior, even if originally innocent, will have resulted in defendant's having the requisite state of knowledge by the time of the charged crime.

(Citation and punctuation omitted.) *Green v. State*, 352 Ga. App. 284, 289 (2) (c) (834 SE2d 378) (2019). Knowledge is part of the statutory definition of theft by receiving stolen property, which occurs when "[a] person . . . receives, disposes of, or retains stolen property which he *knows* or *should know* was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner." (Emphasis supplied.) OCGA § 16-8-7 (a).

By arguing that he was simply an unwitting victim, Clarke implicitly challenged his own knowledge that he retained the Lexus and BMW 550i despite knowing that they were stolen. Evidence that Clarke submitted to the PDOT VIN

20

verification/correction forms on two additional vehicles was relevant to the knowledge issue raised by Clarke's defense, and established that Clarke had submitted such forms in the past and in a state that did not require law enforcement verification of a VIN. As our Supreme Court has explained:

> The introduction of evidence of repetitive conduct to allow a jury to draw logical inferences about a defendant's knowledge . . . from such conduct is well-established. [Indeed], the justification for admitting evidence of other acts to show knowledge is similar to the justification for allowing such evidence to show intent and is based on the principle that it is unlikely that repetitive conduct, even if originally innocent, will not result in a defendant having the requisite state of knowledge by the time of the charged crime.

(Punctuation omitted.) *Green v. State*, 339 Ga. App. 263, 267 (1) (a) (793 SE2d 156) (2016), citing *State v. Jones*, 297 Ga. 156, 161 (2), n.6 (773 SE2d 170) (2015). We find no abuse of discretion in the trial court's determination that evidence of the other two instances Clarke submitted VIN verification/correction forms to PDOT was relevant and admissible under Rule 404 (b). Because the evidence at issue was admissible as to Clarke's knowledge, we need not determine whether it was also admissible to show absence of mistake. See *Flowers v. State*, 307 Ga. 618, 622 (2) (837 SE2d 824) (2020) (because evidence was admissible under Rule 404 (b) as to

21

motive, need not determine whether it was also admissible to show preparation or plan).

2. Clarke contends that the trial court erred by admitting two recorded interviews he had with police when the State failed to meet its disclosure obligations under OCGA § 17-16-4. We disagree.

During his testimony, the Gwinnett County investigator testified that he spoke with Clarke at his home when he went to further investigate the Lexus and BMW 550i, and that there were two recordings taken at Clarke's home, and one recording of an interview at police headquarters. Outside the presence of the jury and the investigator, defense counsel asked for a mistrial because neither defense counsel nor the State were aware of the existence of the two recordings conducted at Clarke's home. The State confirmed that the investigator had not turned over the two recordings, and the trial court reserved ruling on the motion for mistrial and granted defense counsel and the State a recess to consider how to proceed. The following day, defense counsel again moved for a mistrial, arguing that his defense was "torpedoed" because he was going to attack the investigator's credibility by asking why he did not record any conversations with Clarke. The trial court denied the motion, ruling that the recordings were consistent with everything in the investigator's report.

22

OCGA § 17-16-4 (a) (1) requires the State to produce no later than ten days before trial any relevant written or recorded statements made by the defendant "within the possession, custody, or control of the state or prosecution." OCGA § 17-16-4 (c) contemplates the discovery of additional evidence less than ten days before or during trial, requiring the State to promptly produce it to the defense.

> If the State fails to comply with its statutory discovery obligations, the trial court has discretion under OCGA § 17-16-6 to fashion an appropriate remedy. . . . Although the exclusion of evidence is among the potential remedies, that harsh remedy should be imposed only where there is a showing of both bad faith by the State and prejudice to the defense.

(Citations omitted.) *Cushenberry v. State*, 300 Ga. 190, 194 (2) (a) (794 SE2d 165) (2016).

Pretermitting the question of whether the State acted in bad faith, Clarke has not met his burden of showing he was prejudiced by the State's failure to provide timely notice of the two recordings. Clarke did not dispute that the investigator's report was provided to counsel prior to trial. And, while the State conceded at trial that the investigator's report did not mention the two interviews, Clarke did not contest the State's assertion — or the trial court's conclusion — that the recordings

23

were consistent with the narrative in the investigator's report. Although Clarke contends that "the surprise created a dynamic in the courtroom between the judge, prosecutor and defense attorney that left the appellant with less confidence that his trial attorney would be able to properly defend him," he has made no showing of what, if anything, in the recordings was prejudicial or how his defense strategy would have materially changed had he been given timely notice. See *Murphy v. State*, 299 Ga. 238, 244 (3) (787 SE2d 721) (2016) (no showing of prejudice).

3. Clarke contends that trial counsel provided ineffective assistance when he failed to object to any testimony or evidence concerning the Infiniti. Additionally, he maintains that trial counsel should have tried to suppress his recorded statement to police that he could produce paperwork for the Lexus and BMW 550i, or alternatively should have produced at trial those documents, which Clarke allegedly gave to trial counsel.

> In evaluating claims of ineffective assistance of counsel, we apply the two-pronged test established in *Strickland v. Washington*, [466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984),] which requires a defendant to show that his trial counsel's performance was deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. Additionally, there is a strong

24

presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption. . . . Lastly, unless clearly erroneous, we will uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed de novo.

(Citations and punctuation omitted.) *Duncan v. State*, 346 Ga. App. 777, 783 (2) (815 SE2d 294) (2018). As explained below, Clarke has not established that he received ineffective assistance of counsel.

(a) Pretermitting whether trial counsel made a timely and proper objection to testimony/evidence regarding the Infiniti, given our holding in Division 1 (b) (i) that the evidence was admissible as "intrinsic act" evidence, we find no merit in this argument. "The failure to make a meritless motion or objection does not provide a basis upon which to find ineffective assistance of counsel." (Citation and punctuation omitted.) *White v. State*, 307 Ga. 882, 889 (3) (c) (838 SE2d 828) (2020).

(b) Clarke contends that trial counsel should have filed a *Jackson-Denno* motion to suppress his pretrial statements to police. At trial, the State asked the Gwinnett County investigator whether Clarke told him if he had received any paperwork concerning the BMW 550i, and the investigator responded, "[Clarke] said

25

he had paperwork, but he wasn't able to provide any paperwork." The State then asked whether or not Clarke had received any paperwork on the Lexus, and the investigator testified that Clarke told him that "all the paperwork he had he submitted to [PDOT]." In the recorded interviews discussed in Division 2, supra, Clarke states that he "ha[s] records"; that he gave all paperwork to PDOT; that PDOT "will give you paperwork"; and that the investigator should call PDOT who will send all information. At another point during the recorded interview, Clarke states, "I'll find the paperwork."

At that point in the trial, Clarke contends that trial counsel had two choices, neither of which he exercised: (1) attempt to suppress the statements, or (2) produce the relevant documents that Clarke indicated he had in his possession. Clarke does not explain, however, the content of those documents or what they show. More significantly, Clarke does not show how he was prejudiced by trial counsel's failure to suppress the statements or produce the documents. In fact, during the motion for new trial hearing, Clarke himself confirmed that most of the documents he gave to trial counsel were presented to the jury by the State, but that the State's interpretation of the documents was not accurate.

In order "[t]o show prejudice, the likelihood of a different result must be substantial, not just conceivable. [Moreover,] [i]f an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." (Citation and punctuation omitted.) *Percell v. State*, 346 Ga. App. 219, 223 (4) (816 SE2d 344) (2018). In this case, Clarke "has not demonstrated — or even argued — that the statement[s] . . . w[ere] inadmissible." Id. at 223-224 (4) (b). He simply states that trial counsel should have filed a *Jackson-Denno* motion to suppress his pretrial statements to police without specifying upon what ground the statements should have been suppressed, and/or that counsel should have produced at trial unspecified documents that Clarke provided to counsel without explaining how those documents would have changed the outcome of his case. See id. (no ineffectiveness where defendant failed to show how alleged deficiencies would have changed outcome of case). As Clarke has not indicated how either of these alleged errors had any impact on the outcome of the trial, he has failed to establish ineffective assistance of counsel on this basis. See, e.g., *Washington v. State*, 274 Ga. 428, 430-431 (2) (554 SE2d 173) (2001) (claim that trial counsel was ineffective for failing to interview victim's mother and other unidentified witnesses before trial fails where defendant did not explain how those interviews would have

added to his defense). See also *Cuvas v. State*, 306 Ga. App. 679, 681 (1) (b) (703 SE2d 116) (2010) (counsel's failure to seek a *Jackson-Denno* hearing not ineffective where defendant failed to establish that her statement was not freely and voluntarily given).

*Judgment affirmed. Dillard, P. J., and Rickman, J., concur*.