**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 21, 2023**

# In the Court of Appeals of Georgia

A22A1162. SLAUGHTER v. THE STATE.

LAND, Judge.

After a jury trial, Wayne Tyler Slaughter was convicted of home invasion in the first degree, aggravated assault, and influencing a witness. He appeals from the denial of his motion for new trial, arguing that his trial counsel rendered ineffective assistance by failing to object to certain testimony and failing to request a jury instruction on burglary as a lesser included offense of home invasion. For the following reasons, we affirm.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.

(Citation and punctuation omitted.) *Williams v. State*, 333 Ga. App. 879, 879 (777 SE2d 711) (2015).

So viewed, the record shows that Slaughter and Contessia Woods had dated for more than four years. At 4:00 a.m. on June 1, 2020, Woods and her friend, Andrew Holmes, were at her house when Slaughter showed up outside the house and yelled through the locked door to be let inside. When Woods did not let him in, Slaughter began kicking and hitting the front door and then went to the back door to try to gain entry. Woods called 911 and reported that someone was trying to break into her home. Slaughter then forced his way into the house, pushed past Woods and attacked Holmes. Woods then called 911 again and ran outside.

When law enforcement officers responded to the scene, they located Holmes lying unconscious in a closet with wounds suggesting that he had been struck on his neck and head. Woods told the responding officers that Slaughter entered the home with a black handgun that appeared to be fake and that she saw him hold the handgun against Holmes's face. Holmes testified that Slaughter attacked him and hit him in the head with a black handgun that he believed to be real. Holmes stated that after the attack, Slaughter "went outside after [Woods]."

2

Law enforcement later found Slaughter in an RV at a friend's home. Slaughter refused to leave the RV and threatened to kill himself by stabbing his throat or causing an explosion with a propane tank if any officers tried to get him. Slaughter asked the officers what kind of sentence he would be facing as a result of his actions and said that he "didn't mean to hurt anyone but only wanted to scare" Holmes. When the officers' attempts to negotiate failed, officers shot tear gas into the RV. Slaughter then came out of the RV and was arrested.

While the case was pending, Slaughter made several calls to Woods from jail. During these calls, he asked her to speak with the detective in his case and requested that the charges against him be dropped. Their conversation included a discussion about law enforcement officers' belief that Slaughter had a gun during the incident, a request that Woods tell law enforcement that Slaughter did not have a gun, and comments by Slaughter that he loved Woods and her daughter and wanted to marry her. Slaughter also told Woods what penalties he was facing if convicted and asked Woods if she would be willing to "get probation" instead. After these phone calls, Woods spoke to the detective in the case a second time and wrote a second statement which contradicted her first in several respects.

In several related enumerations of error, Slaughter contends that his trial counsel rendered ineffective assistance of counsel. To prevail on a claim of ineffective assistance, Slaughter must prove "both that his lawyer's performance was deficient and that he was prejudiced by this deficient performance." *Williams v. State*, 304 Ga. 455, 457 (2) (818 SE2d 653) (2018), citing *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that his lawyer's performance was deficient, Slaughter must show that the lawyer "performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms." *Williams*, 304 Ga. at 457 (2). And to prove that he was prejudiced by his lawyer's deficient performance, Slaughter must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U. S. at 694 (III) (B). A claim for ineffective assistance is a "mixed question of law and fact, and we accept the trial court's factual findings unless clearly erroneous but independently apply the law to those facts." (Footnote omitted.) *Tucker v. State*, 362 Ga. App. 489, 496 (2) (869 SE2d 142) (2022). The defendant bears the burden of proof of both prongs of an ineffective assistance claim, and if he fails to establish either prong, the

4

reviewing court need not examine the other. Id. We turn to each of Slaughter's arguments in turn.

1. Slaughter argues that he was denied the effective assistance of counsel when his trial counsel failed to request a jury charge on burglary as a lesser-included offense of a home invasion because there was evidence that Slaughter was holding a replica of a handgun during the incident instead of a real handgun. We find no error.

Contrary to Slaughter's argument, the language of the home invasion statute (OCGA § 16-7-5) and his indictment do not require proof that the firearm used in the incident was a functioning pistol. OCGA § 16-7-5 (b) provides that "[a] person commits the offense of home invasion in the first degree when, without authority and with intent to commit a forcible felony therein and while in possession of a deadly weapon or instrument, which, when used offensively against a person, is likely to or actually does result in serious bodily injury," he enters the dwelling house of another while it is occupied by any person with authority to be present. "It is the possession of a weapon at the time of an unauthorized entry into a dwelling that distinguishes the crime of home invasion from the crime of burglary. Burglary in the first degree requires only an unauthorized entry into an occupied or unoccupied residence with the intent to commit a felony or theft therein." *Mahone v. State*, 348 Ga. App. 491,

5

494 (2), n. 1 (823 SE2d 813) (2019), citing OCGA § 6-7-1 (b) (burglary). The indictment alleges that Slaughter committed the offense of first degree home invasion (OCGA § 16-7-5) in that he "with intent to commit aggravated assault, a forcible felony, therein and while in possession of a pistol, an instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury, enter the dwelling house" of Woods . . . while [it] was occupied".

Here, the indictment did not allege that Slaughter had a functioning firearm, but rather that the pistol was "likely to or actually [did] result in serious bodily injury." The evidence presented at trial shows that Slaughter entered the home while holding a weapon that appeared to be a pistol and used that weapon as a bludgeon to strike Holmes on the head, that it rendered him unconscious and that he had a bleeding wound on his head. Because pistol was used as a weapon to cause serious bodily injury, the jury was authorized to convict Slaughter of the crime of home invasion under the indictment whether or not they believed the object was a functioning firearm. See e. g. *Butts v. State*, 153 Ga. App. 464 (265 SE2d 370) (1980) (a replica of a gun "can be an offensive or deadly weapon under certain circumstances"). Compare *Mahone*, 348 Ga. App. at 494 (2) (defendant did not commit the crime of home invasion in the first degree when he did not possess the iron that he used to

6

attack the victim at the time he entered the home, but instead found the iron after he made the unlawful entry). Here, even if Slaughter's trial counsel had requested a jury charge on burglary as a lesser-included offense of first-degree home invasion, the trial court would not have been required to comply. See *Campbell v. State*, 359 Ga. App. 391, 398-399 (4) (c) (858 SE2d 83) (2021) (trial court did not err in denying defendant's written request for a jury charge on criminal trespass as a lesser-included offense to first-degree home invasion when there was no evidence to support defendant's theory that he committed the assault in some way other than with a firearm).

Further, trial counsel testified during the motion for new trial hearing that his decision not to request burglary as a lesser-included offense to home invasion was strategic. Trial counsel explained that he feared that if Slaughter was convicted of burglary and the other charges that he was facing, and if the sentences were to run consecutively, then the total length of the sentence would have been similar to that which he would receive under a conviction for home invasion. Trial counsel further explained that his defense strategy was to argue that the State failed to prove the elements of home invasion because there was no deadly weapon, and therefore he requested the lesser-included offense of criminal trespass (a misdemeanor) rather than

burglary. "Decisions as to which charges will be requested generally fall within the realm of trial tactics and strategy[, and] strategic decisions provide no grounds for reversal unless such tactical decisions are so patently unreasonable that no competent attorney would have chosen them." (Citations and punctuation omitted.) *Ingram v. State*, 317 Ga. App. 606, 608 (2) (732 SE2d 456) (2012). Accord *McKenzie v. State*, 284 Ga. 342, 347 (4) (b) (667 SE2d 43) (2008) ("[M]atters of trial tactics, even if they appear in hindsight to be questionable, are grounds to find counsel ineffective only if the tactical decision is so patently unreasonable that no competent attorney would have chosen it") (citation and punctuation omitted).

2. Slaughter argues that his trial counsel rendered ineffective assistance by failing to object to testimony from a law enforcement witness who stated an incorrect legal conclusion regarding the elements of the offense of home invasion. We find no error.

Slaughter argues that his trial counsel should have objected to the testimony of Detective James Stockard that he could seek to charge Slaughter with home invasion whether or not the handgun he held was a replica or an actual handgun. Detective Stockard testified at trial that he conducted the post-arrest interview of Slaughter. After reviewing Slaughter's recorded statement at trial, the State asked the

8

detective, "based on your investigation at this point. . . what charges did you seek at that point?" The detective responded that he would seek a charge for "home invasion first degree for kicking in the door and coming in with a firearm, whether it was a replica or an actual firearm." When read in context with the preceeding question, it is clear that the detective was not making a legal conclusion as to the elements of a statute, but was rather explaining the facts on which he based the initial charges against Slaughter.

Further, trial counsel testified at the motion for new trial that his decision not to object was strategic in nature. When asked about his lack of objection, trial counsel stated, "I suppose I could have [objected.] But at the same time I would just probably draw . . . more attention to it." "Trial strategy and tactics do not equate with ineffective assistance of counsel. Effectiveness is not judged by hindsight or by the result. Although another lawyer may have conducted the defense in a different manner . . . the fact that [Slaughter] and his present counsel disagree with decisions made by trial counsel does not require a finding" of ineffective assistance. (Footnote omitted.) *Smith v. State*, 362 Ga. App. 610, 616 (2) (b) (869 SE2d 554) (2022). See also *Roberts v. State*, 344 Ga. App. 324, 336 (4) (a) (810 SE2d 169) (holding that

9

tactical decision not to object to statement in order to avoid drawing jury's attention to it did not amount to ineffective assistance of counsel).

3. Slaughter argues that his trial counsel rendered ineffective assistance by failing to object to Detective Stockard's testimony regarding the charge of influencing a witness. We find no error.

Slaughter argues that Detective Stockard's testimony speculated as to conversations between Slaughter and Wood during phone calls he made from jail. Specifically, Slaughter alleges that Detective Stockard was speculating when he stated that Slaughter and Woods were attempting to "talk in code" by using the phrase "taking probation." The detective testified that he believed Slaughter was asking Woods to change her statement and lie about what happened during the incident even if it meant that she would be subject to probation. The State laid a foundation for his understanding of what they were discussing. When asked if he had "heard the term . . . [']are you willing to get probation[']?" before, the detective replied in the affirmative. He explained that he informed Slaughter during his initial interview that if Woods and Holmes "were lying[,] those charges [for lying would] go to them versus him," and that if Woods were charged with lying, "with her lack of criminal history that meant most likely she would get probation." That interview was played

10

for the jury. At the motion for new trial hearing, trial counsel explained that he did not object to this testimony because he did not believe that it was speculation and was instead the detective's opinion based upon facts from the investigation.

Even if this challenged testimony was speculative and objectionable, we find that Slaughter was not prejudiced by his trial counsel's failure to object to the testimony. Apart from the detective's testimony about the jail phone calls, the actual recordings of the seven phone conversations were played for the jury. Further, Woods testified at trial about these phone calls and that Slaughter had asked her to drop the charges. See *McNeil v. State*, __ Ga. App. __ at (3) (c) (ii) (871 SE2d 303) (2022) (trial court correctly concluded that trial counsel did not render ineffective assistance by failing to object to expert witness's speculative testimony because defendant was not prejudiced by such failure). Accord *Percell v. State*, 346 Ga. App. 219, 225 (4) (c) (ii) (816 SE2d 344) (2018).

4. Slaughter argues that his trial counsel rendered ineffective assistance by failing to object to testimony by Detective Hunter Henry regarding statements made by Woods to law enforcement officers immediately following the incident. He also argues that trial counsel erred by soliciting testimony from Deputy Henry regarding

11

statements by Holmes regarding the use of a gun during the incident. We find no error.

Slaughter argues that trial counsel should have objected to Detective Hunter's hearsay testimony regarding statements that Woods made to law enforcement officers immediately following the incident. Specifically, Detective Hunter testified that he was one of the law enforcement officers who responded to Woods' 911 call, and that Woods told law enforcement officers that at first she "wasn't familiar" with who had knocked on the front and back door of her home until the person came inside and that she saw Slaughter with a gun in his hand. Slaughter also objected to trial counsel's elicitation of hearsay testimony from Detective Henry regarding Holmes's statement that Slaughter held a gun during the incident.

At the motion for new trial, trial counsel testified that his decisions not to object to Woods' testimony and to avoid questioning Holmes about the gun were strategic because it was "all going to come in" anyway and the State had a "reasonable argument" about why each narrative would be presented later in the trial. Trial counsel also indicated that he wanted to minimize his objections. A trial counsel's decision "regarding when and how to raise objections are generally matters of trial strategy, and such strategic decisions do not constitute deficient performance

12

unless they are so patently unreasonable that no competent attorney would have chosen them." (Punctuation and footnote omitted.) *Sowell v. State*, 327 Ga. App. 532, 540 (3)-(4) (a)-(b) (759 SE2d 602) (2014) (trial counsel's failure to object to certain evidence was reasonable trial strategy when he wanted to minimize objections to prove to jury that he had nothing to hide and when he thought any objection would be unsuccessful).

Further, Slaughter has not proven that there would have been a reasonable probability that the jury would have found differently if trial counsel successfully objected at trial. Slaughter admits that the statements in question would likely have eventually been introduced to the jury as impeachment evidence. See *State v. Lane*, 308 Ga. 10, 21 (4) (838 SE2d 808) (2020) ("[A] harmless error does not require reversal of a conviction").

5. Slaughter finally asserts that, under *State v. Lane*, 308 Ga. 10 (828 SE2d 808) (2020), the cumulative effect of the trial counsel's ineffective assistance entitles him to a new trial. Specifically, Slaughter claims that the combined prejudicial effect of his trial counsel's failure to object to certain evidence and to request a burglary as a lesser-included offense to home invasion requires a new trial. See id. at 17 (1) (holding that "the proper approach" to assessing multiple claims of trial counsel

13

ineffectiveness is to "consider collectively the prejudicial effect, if any" of those errors). However, "nothing in *Lane* has changed our analysis where we have found no examples of ineffective assistance of counsel." *Crider v. State*, 356 Ga. App. 36, 50 (4) (846 SE2d 205) (2020). See *Lane*, 308 Ga. at 14 (1) (explaining that appellate court would consider cumulative effective of counsel's errors when counsel was deficient in two distinct respects and the trial court committed at least one evidentiary error). Accordingly, because Slaughter has failed to show error, he has likewise failed to show cumulative error. See *Anderson v. State*, 313 Ga. 178, 190 (3) (c) n. 11 (869 SE2d 401) (2022).

*Judgment affirmed. McFadden, P. J., and Gobeil, J., concur*.