296 Ga. 738
FINAL COPY

S14A1884. ALLEN v. THE STATE.

HINES, Presiding Justice.

Deimeyon X. Allen ("Allen") appeals from his convictions and sentences for the malice murder of Keith Booker, the aggravated assault of David Armour, and possession of a firearm during the commission of a crime.  For the reasons that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that Allen and his brother Antoine Allen ("Antoine") lived in the same housing complex; Antoine lived with his mother, and Allen lived in a separate unit.    Roger Armour ("Roger") lived in a nearby unit, across a parking area; at the time of the crimes,

---

[1] The crimes were committed on October 14, 2008.  On September 19, 2010, a Fulton County grand jury indicted Allen for the malice murder of Booker, the felony murder of Booker while in the commission of the crime of aggravated assault, the aggravated assault of Booker, possession of a firearm during the commission of the crime of murder, and the aggravated assault of David Armour. Allen was tried before a jury November 8-10, 2010, and found guilty of all charges.  On November 16, 2010, Allen was sentenced to life in prison for the malice murder of Booker, a concurrent term of 20 years in prison for the aggravated assault of David Armour, and a consecutive term of five years in prison for possession of a firearm during the commission of the crime of murder; the remaining charges either merged with a crime for which a sentence was entered or were vacated by operation of law.  See *Malcolm v. State*, 263 Ga. 369, 371-374 (4) (5) (434 SE2d 479) (1993). Allen filed a motion for new trial on November 16, 2010, which he amended on June 6, 2011, and again on July 31, 2012.  On April 23, 2013, the motion, as amended, was denied.  Allen filed a notice of appeal on April 25, 2013, and the appeal was docketed in this Court for the September 2014 term and submitted for decision on the briefs.

Roger was outside his apartment with murder victim Booker, David Armour ("David"), and several others, including Allen and Antoine.

David and others teased Antoine about a previous incident in which Antoine had called the police, and David and Antoine began arguing; a suggestion was made that the two men engage in fisticuffs, but Antoine said he would shoot his tormentors instead, and he and Allen ran toward their mother's apartment, pursued by David and Booker.

Allen went in his mother's apartment and emerged firing a Glock .40 caliber pistol at David and Booker, who fled to Roger's apartment. Roger retrieved his .380 caliber pistol and attempted to return fire, but the pistol jammed. Inside the apartment, it was learned that Booker had been shot. Booker was taken to a hospital, where he died of a single gunshot wound to his heart; the bullet entered from his back. Allen told investigating law enforcement officers that: he engaged the men in conversation when he went outside to take out the trash; an argument ensued and continued as the men followed him toward his mother's apartment, with men pushing and pulling him; Roger was the first to produce a pistol and pointed it at Allen and Antoine; Allen went to his mother's apartment to retrieve his .40 caliber Glock pistol, saw through the

window that the men were still outside, exited his mother's apartment and found one of the men pointing a pistol at him; he pulled his pistol from his waistband and fired at the men, while they faced him; he ran and tossed his pistol away before climbing a fence. Ten shell casings were found in the parking area between the housing units of Allen's mother and Roger, which casings were from the same .40 caliber weapon; the projectile taken from Booker's body was also fired from a .40 caliber weapon. Allen's .40 caliber Glock pistol was not recovered.

1. The evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Allen was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. In his motion for new trial, Allen relied in part on OCGA §§ 5-5-20[2] and 5-5-21,[3] contending that the verdicts were decidedly and strongly against the

---

[2] OCGA § 5-5-20 reads:
> In any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the judge presiding may grant a new trial before another jury.

[3] OCGA § 5-5-21 reads:
> The presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in

weight of the evidence, and contrary to the principles of equity and justice, such as to warrant the exercise of the trial court's discretion to grant a new trial. Allen now contends that, in addressing his motion for new trial, the trial court did not apply the correct standard, claiming that the trial court's order denying the motion found only that the evidence was sufficient to support the verdicts under *Jackson*, supra, and thus, the case should be remanded.

As this Court has noted:

> Even when the evidence is legally sufficient to sustain a conviction, a trial judge may grant a new trial if the verdict of the jury is "contrary to . . . the principles of justice and equity," OCGA § 5-5-20, or if the verdict is "decidedly and strongly against the weight of the evidence." OCGA § 5-5-21. When properly raised in a timely motion, these grounds for a new trial — commonly known as the "general grounds" — require the trial judge to exercise a "broad discretion to sit as a 'thirteenth juror.'" *Walker v. State*, 292 Ga. 262, 264 (2) (737 SE2d 311) (2013). In exercising that discretion, the trial judge must consider some of the things that she cannot when assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence. See *Choisnet v. State*, 292 Ga. 860, 861 (742 SE2d 476) (2013). Although the discretion of a trial judge to award a new trial on the general grounds is not boundless — it is, after all, a discretion that "should be exercised with caution [and] invoked only in exceptional cases in which the evidence preponderates heavily against the verdict," *Alvelo v. State*, 288 Ga. 437, 438 (1) (704 SE2d 787) (2011) (citations and punctuation

---

favor of the finding.

4

omitted) — it nevertheless is, generally speaking, a substantial discretion. See *State v. Harris*, 292 Ga. 92, 94 (734 SE2d 357) (2012).

*White v. State*, 293 Ga. 523, 524 (2) (753 SE2d 115) (2013) (Footnote omitted.)

Allen's characterization of the trial court's order denying his motion for new trial as incorrect because it did not apply the correct standard of review is misplaced. The court did not simply state that the evidence was sufficient to allow the jury to find Allen guilty, rather, the court's order states:

> After considering the record in this case, the Defendant's amended motions for new trial, the State's response in opposition at the hearing in this case, and the arguments by both the defendant and State on the issues contained therein, the Defendant's motion for new trial is hereby DENIED.

Nothing in this order indicates that the trial court failed to "perform[ ] its 'duty to exercise its discretion and weigh the evidence' in its consideration of the general grounds. [Cit.]" *White*, supra at 525. The court did not state the incorrect standard in its order, see *Choisnet*, supra; *Manuel v. State*, 289 Ga. 383, 386 (2) (711 SE2d 676) (2011), and nothing in the record indicates that the court was unaware of its responsibility. See *Copeland v. State*, 327 Ga. App. 520, 525 (2) (759 SE2d 593) (2014). Indeed, the record demonstrates the opposite; during the hearing on the motion for new trial, the court's attention

5

was specifically called to OCGA §§ 5-5-20 and 5-5-21, and that consideration of the general grounds thereunder involved different issues than merely the sufficiency of the evidence, and the court responded that it would not grant a new trial as "the thirteenth juror." The court clearly recognized that, in its discretion, it could grant a new trial under the authority of OCGA §§ 5-5-20 and 5-5-21, and chose not to do so. Compare *Alvelo*, supra.

Allen also argues that the verdicts were against the weight of the evidence, and that the trial court should have granted a new trial on the general grounds, noting that there were inconsistencies in the evidence, and positing that Roger had accidentally shot Booker. However,

> [a] motion for new trial based on OCGA § 5-5-20, i.e., that the verdict is contrary to the evidence, addresses itself only to the discretion of the trial judge. *Witt v. State*, 157 Ga. App. 564 (2) (278 SE2d 145) (1981). Whether to grant a new trial based on OCGA § 5-5-21, i.e., that the verdict is strongly against the evidence, is one that is solely in the discretion of the trial court, and the appellate courts do not have the same discretion to order new trials. *Willis v. State*, 263 Ga. 597 (1) (436 SE2d 204) (1993).

*Smith v. State*, 292 Ga. 316, 317 (1) (b) (737 SE2d 677) (2013). Thus, even when an appellant asks this Court to review

> a trial court's refusal to grant a new trial on the general grounds, this Court must review the case under the standard set forth in *Jackson v. Virginia*, [supra], that is, if the evidence viewed in the

6

light most favorable to the prosecution, supports the verdict or verdicts. [Cit.]

*Williams v. State*, 296 Ga. 573, 574 (769 SE2d 318) (2015).  And, as noted in Division 1, supra, under the standard set forth in *Jackson*, supra, the evidence authorized the jury to find Allen guilty of the crimes of which he was convicted.

3. Allen contends that the court should have, sua sponte, granted a mistrial because of unclear verdicts and other improprieties concerning the rendering of the verdicts.[4]  The verdict form presented to the jury read, in pertinent part:

> Count One — Murder.  We, the jury, find the Defendant _____
> Or
> We, the jury, find the Defendant _____ of Voluntary Manslaughter.

And, it is uncontroverted that when the verdicts were initially presented to the court, the verdict form had both of the above blanks filled in with the word "Guilty."  The jury foreman then requested the verdict form be returned to him, and he then wrote, on the back of it:  "Change Voluntary Manslaughter to NOT GUILTY," but no change was made to the front of the form.  The form was presented to the court, and the foreman affirmed that the verdicts had been agreed to by all 12 jurors.  The foreman read the verdicts as follows:

---

[4] Allen asserts that the jury felt rushed in reaching its decisions and engaged in "improper jury conduct," but fails to show any instance of such in the record.

7

Count one, murder, we, the jury find the defendant guilty.

Count two, felony murder, we, the jury find the defendant guilty.

Count three, aggravated assault, we, the jury find the defendant guilty.

Count four, possession of a firearm during the commission of a felony, we, the jury find the defendant guilty.

Count five, aggravated assault, we, the jury, find the defendant guilty.

The verdicts were then reviewed by Allen's counsel and the prosecutor. Allen requested that the jury be polled; each juror answered affirmatively to three questions: "Is this your verdict?"; "Was this your verdict in the jury room?"; and, "Is this now your verdict?"

Although Allen argues that the completion of the verdict form shows that the jury did not properly understand the crimes charged, he points to nothing in the record other than the initial scrivener's error, which was corrected. Allen also asserts that he was deprived of unanimous verdicts. He specifically contends that the trial court did not address any issue regarding the "unanimity of the verdict" until a later hearing[5] at which the jury foreman testified that he made the notation on the back of the verdict form so as to reflect the jury's

---

[5] Allen first raised a question regarding the jury form during the sentencing hearing six days after the return of the verdicts, but declined to pursue any issue when the court recited the events concerning the return of the verdicts to the foreman and his writing the notation on the back of the form.

vote,[6] but this contention is not correct.  Rather, the court polled the jurors as to whether the verdicts of guilty were indeed the verdicts of each juror.

> "In criminal cases the privilege of polling a jury is the legal right of the defendant, and does not depend upon the discretion of the court." [Cit.]  The purpose of the rule is to insure that each member of the jury assents to the verdict, and for the court to discern possible coercion.

*Benefield v. State*, 278 Ga. 464, 466 (602 SE2d 631) (2004).   "[A] negative response to a poll question 'is enough to raise the inference that the finding of the jury was not concurred in by each of the jurors, and, this being true, there was no legal verdict.' [Cit.]"  Id.   When the jury was polled, there were no negative responses, and the court did not err in determining that the jury reached unanimous verdicts.

Judgments affirmed.  All the Justices concur.


Decided March 16, 2015.

Murder. Fulton Superior Court. Before Judge Newkirk.

Knight & Mitchell, Jennifer L. Knight, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Joshua D.

___

[6] The foreman testified that he had not initially realized the form allowed for only one guilty verdict for either murder or voluntary manslaughter.

Morrison, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason M. Rea, Assistant Attorney General, for appellee.