**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 23, 2024**

# In the Court of Appeals of Georgia

A24A0174. WARD v. THE STATE.

HODGES, Judge.

Following a jury trial, Gregory Lamar Ward was convicted as a recidivist of felony-level family violence battery (OCGA § 16-5-23.1 (a), (f) (2)). The trial court denied his motion for a new trial, and he filed the instant appeal. In it, he argues that: (1) the trial court failed to exercise its discretion in considering the general grounds (OCGA §§ 5-5-20, 5-5-21); (2) the evidence was insufficient to sustain his conviction; (3) the trial court erred in admitting his 2018 conviction for family violence battery under OCGA § 24-4-404 (b) ("Rule 404 (b)")); (4) the trial court gave an erroneous Rule 404 (b) jury instruction; and (5) the trial court also erred in admitting certain out-

of-court statements for impeachment purposes.[1] For the reasons that follow, we affirm.

Viewed in the light most favorable to the verdict,[2] the evidence adduced at trial shows that on the night of September 27, 2020, witness Angela Withers heard her apartment complex neighbor, Rebecca Simpson, screaming for her sister, who also lived nearby. Withers did not see what was going on because she was indoors, while Simpson was outside. Because Simpson sounded "scared[,]" Withers called 911. Officer Bobby Elswick with the Dalton Police Department responded to the scene. He found Simpson in the doorway of her apartment, in the rain, "hysterical" and "crying." She was holding a bloody, wet rag to her mouth and had visible cuts inside her lips, with visible swelling on the right side.

Elswick testified that, at the scene, Simpson told him Ward "struck her in the face four times." A witness told the officer that Ward "ran across the street towards

---

[1] *Morgan County v. Gay*, 352 Ga. App. 555, 559 (1) (a), n. 4 (834 SE2d 576) (2019) ("For convenience of discussion, we have taken the enumerated errors out of the order in which appellant has listed them . . . .") (citation and punctuation omitted).

[2] *Percell v. State*, 346 Ga. App. 219 (1) (816 SE2d 344) (2018).

a warehouse." Elswick and another officer found Ward "hiding" in the trailer of a semi-truck, filled with carpet rolls, that was backed up to a loading dock.

Simpson testified at trial, however, that she accidentally slipped and fell on the rain-slick tiled floor of her entryway and could not get up because she has a bone disease and a bad knee. She and Ward had been arguing inside her apartment. They had been in a romantic relationship for about a month and a half. Simpson and Ward were both "[v]ery" intoxicated, and Simpson was yelling at Ward because he had left her somewhere and she was "jealous" that he had been with another woman. She was attempting to leave and when Ward "grabbed" her to prevent her from going, she "slipped." When Ward tried to pick her up, she could not raise her knee. She testified that Ward's forearm hit her lip, causing her tooth to cut into it, and she crawled outside and walked to her sister's home. By this time, Ward "had done left."

At trial, Simpson denied telling the officer that Ward hit her, instead testifying that she only "said it felt like I had been beat in the face a thousand times" or "felt like I'd been hit about four or five times." She then testified, contrary to her earlier testimony, that she did not tell the officer Ward tried to pick her up, but only that she had slipped, and Ward's arm "caught [her] lip[,]" accidentally injuring her. Elswick

3

testified, by contrast, that Simpson did not tell him it only "fe[lt] like" she was hit in the face four times. He testified that on the night of the injuries, Simpson said nothing to him about an accidental injury or a slip-and-fall. Elswick did not have a body-cam, so there is no footage of his interaction with Simpson.

At trial, Simpson testified that she was still in touch with Ward, he had expressed affection for her since the injuries, she loved him and wanted a favorable result for him in court, and he had apologized to her for what happened on the date she was injured.

1. Ward's motion for new trial relied in part upon OCGA §§ 5-5-20 and 5-5-21, invoking the trial court's discretion as the thirteenth juror to set the verdict aside as contrary to the principles of justice and equity, because of the conflicting testimony from Simpson and Elswick regarding whether Simpson's injuries were the result of an accident or Ward's intentional actions. On appeal, Ward contends the record shows no evidence that the trial court exercised its discretion in denying his motion for new trial. We find no error.

> Even when the evidence is legally sufficient to sustain a conviction, a trial judge may grant a new trial if the verdict of the jury is "contrary to . . . the principles of justice and equity," OCGA § 5–5–20,

or if the verdict is "decidedly and strongly against the weight of the evidence." OCGA § 5-5-21. When properly raised in a timely motion, these grounds for a new trial — commonly known as the "general grounds"— require the trial judge to exercise a broad discretion to sit as a thirteenth juror. In exercising that discretion, the trial judge must consider some of the things that she cannot when assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence. Although the discretion of a trial judge to award a new trial on the general grounds is not boundless — it is, after all, a discretion that should be exercised with caution and invoked only in exceptional cases in which the evidence preponderates heavily against the verdict — it nevertheless is, generally speaking, a substantial discretion.

(Citations and punctuation omitted.) *Allen v. State*, 296 Ga. 738, 740 (2) (770 SE2d 625) (2015).

Although Ward argues that the record contains no evidence showing the trial court exercised its discretion, this is incorrect. At the hearing on Ward's motion for new trial, Ward's attorney asked the trial court to sit as the thirteenth juror to consider conflicting witness testimony. In its order, the trial court stated that, "[h]aving reviewed the [d]efendant's [m]otion, the record in this case, and having heard the

arguments of counsel, the [c]ourt hereby DENIES the [d]efendant's [m]otion for [n]ew [t]rial." The trial court's order in *Allen*, supra, was remarkably similar. It said: "After considering the record in this case, the Defendant's amended motions for new trial, the State's response in opposition at the hearing in this case, and the arguments by both the defendant and State on the issues contained therein, the Defendant's motion for new trial is hereby DENIED." 296 Ga. at 740-741 (2). In assessing this order, the Supreme Court found:

> Nothing in this order indicates that the trial court failed to perform its duty to exercise its discretion and weigh the evidence in its consideration of the general grounds. The court did not state the incorrect standard in its order, and nothing in the record indicates that the court was unaware of its responsibility.

(Citations and punctuation omitted.) *Allen*, 296 Ga. at 741 (1); accord *Drennon v. State*, 314 Ga. 854, 860 (2) (880 SE2d 139) (2022) (explaining that when a trial court evaluates the general grounds as the "thirteenth juror," we presume that the court understood the nature of its discretion and exercised it, unless the record shows otherwise, even if the court did not explicitly mention its discretion with respect to the general grounds). In addition, after hearing the evidence and arguments of counsel,

the trial court in the instant case said it would "take it under advisement" before returning a decision. See *Leggett v. State*, 331 Ga. App. 343, 345 (2) (771 SE2d 50) (2015) (finding, where trial court clearly indicated it would not rule on motion for new trial until it had reviewed the transcript, then entered an order noting it had "heard the evidence and argument of counsel[,]" that the appellate court "will not presume the trial court committed error where that fact does not affirmatively appear") (citation and punctuation omitted). "Under these circumstances, [Ward] has not shown that the trial court erred in denying his motion on the general grounds alleged." *Caviston v. State*, 315 Ga. 279, 284 (1) (882 SE2d 221) (2022).

2. Ward argues that the evidence was insufficient to sustain his conviction for family violence battery because the State failed to prove that Ward and Simpson were household members and also failed to prove Ward's intent. We disagree.

> In considering the sufficiency of the evidence supporting a criminal conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. It is the function of the jury, not the reviewing court, to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the evidence. As long as there is some competent evidence, even though contradicted, to support each fact

necessary to make out the [S]tate's case, the jury's verdict will be upheld.

(Citations and punctuation omitted; emphasis in original.) *Percell v. State*, 346 Ga. App. 219, 219-220 (1) (816 SE2d 344) (2018).

OCGA § 16-5-23.1 provides, in pertinent part, that:

(a) A person commits the offense of battery when he or she intentionally causes substantial physical harm or visible bodily harm to another.

(b) As used in this Code section, the term "visible bodily harm" means bodily harm capable of being perceived by a person other than the victim and may include, but is not limited to, substantially blackened eyes, substantially swollen lips or other facial or body parts, or substantial bruises to body parts. . . .

[. . .]

(f) (1) As used in this subsection, the term "household member" means past or present spouses . . . or other persons living or formerly living in the same household.

(2) If the offense of battery is committed between household members, it shall constitute the offense of family violence battery . . . .

Ward concedes in judicio that Simpson sustained visible bodily harm. He argues, however, that the evidence was insufficient to show that Simpson and Ward were living or formerly living in the same household. Although Simpson initially testified that she and Ward did not live together, when the State asked, "did you share a residence, that's what I'm asking[,]" Simpson responded, "Yes." She also testified that although Ward had a separate residence, "he stayed mostly at my house." Although Ward "emphasizes that [Simpson] gave conflicting and self-contradictory testimony[,] . . . [s]uch conflicts and contradictions are matters of credibility for the jury to resolve; so long as some competent evidence supports the facts necessary for the State's case, the jury's verdict stands." *Davis v. State*, 244 Ga. App. 708, 710 (1) (536 SE2d 596) (2000). The jury was authorized to find that Simpson and Ward were members of the same household.

Ward also argues that insufficient evidence showed his intention to injure Simpson, given the lack of eyewitnesses and her testimony that she slipped and fell, accidentally injuring her lip when it hit Ward's forearm. As noted above, however, the evidence showed Simpson and Ward were arguing, he attempted to stop her from leaving the apartment, she told the police officer Ward hit her four or five times, and

9

Ward fled the scene and hid in a trailer. From this and other evidence discussed above — in particular the evidence of the multiplicity of times Ward hit Simpson; the resulting visible, bloody injury; and the fact that Ward apologized to her afterwards — the jury was authorized to infer that he intentionally caused Simpson's visible bodily injury. See *Adams v. State*, 280 Ga. App. 779, 781 (634 SE2d 868) (2006) ("Intent, of course, may be inferred from circumstances."); see generally *Collins v. State*, 283 Ga. App. 188, 190-191 (1) (a) (641 SE2d 208) (2007) (finding that intent may be inferred because "the incident occurred during a heated argument" and because of the perpetrator's "subsequent flight[,]" as well as from other acts evidence admitted to prove intent).

3. Ward argues that the trial court erred in admitting his 2018 conviction from his guilty plea to family violence battery against his then-wife under OCGA § 24-4-404 (b). He contends that the prior conviction was not relevant to an issue other than propensity, in particular because the State introduced the prior conviction without testimony or a proffer showing his intent or motive. He also argues that any probative value was outweighed by prejudicial effect. We disagree.

As an initial matter, this enumeration of error was not preserved for our review. Although Ward's counsel did say at trial, "I would object to the 404 (b) evidence being introduced[,]" he gave no basis for the objection. "In order to preserve an objection for appellate review, the specific ground of the objection must be made at the time the challenged evidence is offered. Therefore, we review this enumeration for plain error only." (Citation and punctuation omitted.) *Lopez v. State*, 355 Ga. App. 319, 322 (2) (844 SE2d 195) (2020). To show plain error,

> first, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation and punctuation omitted.) Id.

The State gave notice of its intention to introduce the conviction to show intent because it expected Simpson to testify, as she did, that her injury resulted from an

accident rather than Ward's intent to injure her. The State also argued to the trial court its need to introduce the conviction to show Ward's motive to control his intimate partners through violence. The trial court ruled that the prior conviction could be introduced to show intent and motive. At trial, the State presented a certified copy of a conviction showing Ward had pled guilty to family violence against his then-wife. Ward now contends the State did not need the conviction to show motive or intent, that it impermissibly showed his bad character or criminal propensity, and that it was more prejudicial than probative.

OCGA § 24-4-404 (b) provides, in pertinent part:

Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Under the three-part test for admissibility adopted by our Supreme Court, the moving party must show that (1) the other acts evidence is relevant to an issue other than the defendant's character; (2) the probative value is not substantially outweighed by undue prejudice under OCGA § 24-4-403 ("Rule 403"); and (3) there is sufficient

12

proof that a jury could find by a preponderance of evidence that the defendant committed the other crimes. *Jones v. State*, 301 Ga. 544, 545 (802 SE2d 234) (2017); *Olds v. State*, 299 Ga. 65, 69-70 (2) (786 SE2d 633) (2016); *Bradshaw v. State*, 296 Ga. 650, 656 (3) (769 SE2d 892) (2015).

The threshold inquiry under the three-part test as set out above "is whether the evidence is probative of a material issue other than character." *Thompson v. State*, 302 Ga. 533, 539 (III) (A) (807 SE2d 899) (2017). The trial court in the instant case admitted the evidence to show intent and motive, which are among the list of commonly recognized permissible purposes set out in OCGA § 24-4-404 (b). As to intent, "a defendant puts his intent in issue when he pleads not guilty unless he takes affirmative steps to withdraw intent as an element to be proved by the State." *State v. Jones*, 297 Ga. 156, 161 (2), n. 4 (773 SE2d 170) (2015). Here, Ward pleaded not guilty. Additionally, given Simpson's testimony that her injuries resulted from Ward's arm accidentally hitting her mouth, it is clear that the State's burden of proving intent was not relieved. Because the prior crime and the offense for which Ward was on trial are identical, the intent required to prove the crimes was necessarily the same. See *Burgess v. State*, 349 Ga. App. 635, 640-641 (3) (824 SE2d 99) (2019) (finding that

State satisfied first prong of the three-part test, even though it only introduced the prior accusation and conviction without offering testimony or a factual proffer where intent required for prior and current offenses was identical), overruled in part on other grounds by *Hill v. State*, 360 Ga. App. 143, 146, n. 4 (860 SE2d 893) (2021). The first prong of the Rule 404 (b) test was satisfied. We find no error, plain or otherwise.

We turn now to the second prong, the Rule 403 balancing test, under which the trial court may exclude even relevant evidence if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403. The application of the Rule 403 test is a matter committed principally to the discretion of the trial courts, and "calls for a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." (Citation and punctuation omitted.) *Bradshaw*, 296 Ga. at 657-58 (3). "The major function of Rule 403 is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." (Citation and punctuation omitted.) *Olds*, 299 Ga. at 70 (2), n. 7.

The exclusion of relevant evidence for this reason "is an extraordinary remedy which should be used only sparingly, since it permits the trial court to exclude concededly probative evidence." (Citation and punctuation omitted.) *Harvey v. State*, 344 Ga. App. 761, 769-770 (2) (a) (ii) (811 SE2d 479) (2018). For this reason, "we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." (Citation and punctuation omitted.) *Anglin v. State*, 302 Ga. 333, 337 (3) (806 SE2d 573) (2017).

Ward asserts that the State presented no evidence other than the certified prior conviction itself, which does not provide details of similarity between the crimes and which he contends was prejudicial because it "provoke[d] an emotional response from the jury[.]" In order to show a defendant acted with the criminal intent required by OCGA § 16-5-23.1 (a), the probative value of the prior crimes evidence depends in part on the similarity of the offenses, regardless of whether there are differences in the manner in which the crimes were committed. *Burgess*, 349 Ga. App. at 642 (3). Here, as Ward has pointed out, the State submitted only a certified copy of his guilty plea and conviction. As a result, "evidence that an accused committed an intentional act generally is relevant to show — the evidence, in other words, has some tendency to

make more or less probable — that the same defendant committed a similar act with the same sort of intent . . . ." (Emphasis omitted.) *Olds*, 299 Ga. at 72 (2). When, as in the instant case, "the prior and current crimes are identical and the State introduces defendant's prior conviction demonstrating that he was previously convicted of an identical crime requiring the State to prove he acted with an identical specific criminal intent, the similarity in the manner of commission of the crimes may be of lesser importance." *Burgess*, 349 Ga. App. at 642 (3). Here, in both instances, the State was required to prove Ward intended to injure an intimate partner. In the prior crime, that partner was his spouse. In the instant case, it was Simpson, with whom he shared a residence. Given Ward's not-guilty plea and Simpson's testimony that Ward injured her accidentally, the evidence of the prior crime was highly relevant to the issue of Ward's intent to injure Simpson, making its probative value greater than its possible prejudicial effect. "Generally speaking, the greater the tendency to make the existence of a fact more or less probable, the greater the probative value." *Olds*, 299 Ga. at 72 (2). Further, "because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense." (Citation and punctuation omitted.) *Kirby v. State*, 304 Ga. 472, 480-481 (4) (a) (819 SE2d 468)

(2018). As discussed above, the prior guilty plea was important to the State's case, thus enhancing its probative value, because while there was evidence from the police officer that Simpson told him Ward hit her multiple times, this evidence was contradicted by Simpson's own testimony, and there was no eyewitness evidence. "Further, because the specific details of the prior crime were not disclosed, the potential for confusion concerning which crime [Ward] was on trial for was minimized." *Burgess*, 349 Ga. App. at 643 (3).[3]

We find no error, plain or otherwise, in the trial court's admission of Ward's prior guilty plea and conviction for family violence battery.[4]

4. Ward argues that the trial court committed plain error in its jury instruction on the admissibility of other acts evidence under Rule 404 (b). We disagree.

---

[3] Ward does not challenge the third prong of the Rule 403 balancing test, that is, whether there was sufficient proof for the jury to find by a preponderance of the evidence that Ward committed the other crime. See generally *Harvey*, 344 Ga. App. at 771 (2) (a) (iii), n. 39 (noting that a conviction, even when based upon a guilty plea, is sufficient proof that defendant committed the other act).

[4] "Because the evidence of [Ward's prior guilty plea and conviction] was relevant to prove intent, we need not decide whether it was also relevant for other purposes, as the trial court found." *Rooks v. State*, 317 Ga. 743, 757 (4) (a) (ii), n. 14 (893 SE2d 899) (2023); accord *Naples v. State*, 308 Ga. 43, 52 (2) (e), n. 9 (838 SE2d 780) (2020).

Ward asserts that the trial court, sua sponte, charged the jury prior to trial on similar transaction evidence under Georgia's former Evidence Code, which was replaced by the current Evidence Code in 2013, then following the close of evidence, charged the jury under the current Evidence Code on the conditional admissibility of other acts evidence.[5] He also argues that because the jury deadlocked before returning a verdict, and sent a note asking the court to "please redefine the limitations concerning the 2018 conviction of Mr. Ward[,]" this means "[i]t is possible that the jury convicted Ward on the erroneous belief that he committed this crime because he has been convicted of it before." After receiving the jury's note, the trial court re-charged the jury using the language of its final charge. On appeal, Ward posits that neither instruction limited the jury's consideration to the non-character issues of intent and motive.

Pertinently, Ward's trial attorney raised no objections to the now-disputed jury charges at trial, but did raise the issue at the motion for new trial hearing and in a post-hearing amended motion for new trial. We review such assertions for plain error. See *State v. Kelly*, 290 Ga. 29, 31-32 (1), and 33 (2) (a) (718 SE2d 232) (2011) (providing

---

[5] See Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.34.50.

for review of jury instruction under plain error standard and setting forth plain error test); *Lopez*, 355 Ga. App. at 322 (2) (setting forth plain error test). The court's pre-trial charge, in pertinent part, instructed the jury that:

> Sometimes evidence is admitted for a limited purpose. Such evidence may be considered by the jury *for the sole issue or purpose for that which the evidence is limited and not for any other purpose.* The law provides that other alleged acts of this defendant that are sufficiently similar or connected and therefore purportedly related to the offenses for which the defendant is on trial *may be considered for the limited purpose of showing, if it does, motive or intent in the crimes charged in the case now on trial. Such evidence, if any, may not be considered by you for any other purpose.*
>
> The defendant is on trial for the offense charged in this bill of indictment only and not for any other acts[.] . . . *Remember to keep in mind the limited use and consideration of the evidence of other acts* of the defendant.

(Emphasis supplied.) The jury charge after the close of evidence was, in pertinent part, as follows:

> Sometimes evidence is admitted conditionally[.] . . . In order to prove their case of family violence battery, *the State may present evidence of other offenses for the purpose of showing defendant's motive or intent.* To do so, the State has offered evidence of another offense allegedly

committed by the accused. You are permitted to consider that evidence for its bearing on any matter to which it is relevant but only insofar as it may relate to that issue and *not for any other purpose*.

The defendant is on trial for the offenses charged in this plea and indictment only and not for any other acts. Before you may consider any other alleged acts, you must first determine whether the accused committed any other alleged acts. If so, you must then determine whether that act sheds any light on the issue for which it was admitted and the crimes charged in the indictment of this trial. *Such evidence is at most supporting evidence of some issues and may not by itself be the basis of conviction for the case on trial.*

(Emphasis supplied.) These jury instructions are not identical to the Georgia Suggested Pattern Jury Instructions in effect at the time of trial because, Ward contends, that pattern instruction included language not in the trial court's charge: "'You may not infer from such evidence that the defendant is of a character that would commit such crimes.' Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 1.34.10 (4th ed. 2007, updated July 2021)."

This does not end our inquiry, however. It is not necessarily error to fail to give an instruction in the exact language requested or, as in this case, the exact language of the current pattern charge. See generally *Tensar Earth Technologies v. City of Atlanta*,

20

267 Ga. App. 45, 54-55 (7) (598 SE2d 815) (2004). This may be true even if a court uses language from a pattern charge that has since been replaced. See generally *Hampton v. State*, 272 Ga. 284, 287 (7) (527 SE2d 872) (2000) (finding that "although it may be the better practice for trial courts to instruct the jury on this point in accordance with the current language of the Suggested Pattern Jury Instructions . . . it is not error to charge the jury as was done here") (citation omitted). The crucial question here is whether the "language in question was and is consistent with Georgia's pattern jury instructions . . . ." *Taylor v. State*, 306 Ga. 277, 286-287 (3) (c) (830 SE2d 290) (2019).

Thus, to Ward's point, although the jury charges per se did not include language telling the jury it could not consider Ward's prior guilty plea and conviction as evidence of his character, the instructions clearly charged the jury that it could *only* consider the prior conviction in assessing Ward's intent and motive in the crime for which he was on trial.[6] As such, the charge necessarily excluded the jury's

---

[6] Further, just prior to formally announcing that it was charging the jury and in response to an objection near the end of closing arguments, the trial court instructed that the prior conviction could only be used "to show intent or motive, but not to show character."

consideration of the other acts for all purposes — including character — except motive and intent. The trial court also clearly instructed the jury that the evidence of Ward's prior conviction "may not by itself be the basis of conviction for the case on trial." As a result, and having examined the charge as a whole, see *Taylor*, 306 Ga. at 286 (3) (b), "[t]he language in question was and is consistent with Georgia's pattern jury instructions[.]" Id. at 287 (3) (c). Thus, "the charge of the trial court did not involve a clear departure from a settled legal rule, and the charge was not, therefore, plain error." *McKibbins v. State*, 293 Ga. 843, 854 (7) (750 SE2d 314) (2013) (finding no plain error where, inter alia, appellant pointed to no decision in which the appellate courts had found error of the type appellant was asserting).

5. Finally, Ward contends that the trial court abused its discretion in admitting for impeachment purposes Simpson's out-of-court statement to her daughter, Jessica Holcombe, in which Simpson said she and Ward had "the big fight, the bad fight" and that Ward "pushed" her to the floor. Ward argues that the State failed to lay a proper foundation for the statement under OCGA § 24-6-613.[7] We find no plain error.

---

[7] Ward also argues that because of statements in the State's closing argument, the jury was allowed to consider the evidence not just for impeachment purposes, but as substantive evidence. Ward points to no objection he made in the trial court to the State's closing argument, nor does he provide record citations to that closing

In the trial court, Ward objected to Holcombe's testimony on the basis of hearsay. The trial court allowed the testimony for impeachment purposes. In the context presented here, a prior out-of-court statement is not considered hearsay as long as the declarant is available to testify and is subject to cross examination about it. See OCGA §§ 24-6-613,[8] 24-8-801 (d) (1) (A).[9] As Ward contends, however, Simpson testified before Holcombe, and Simpson was never recalled to the stand to explain what she told Holcombe.

As an initial matter, although Ward argues that the trial court erred because no proper foundation was laid for Holcombe's testimony, Ward never objected below on

---

argument or citations to legal authority supporting this particular contention. Ward has abandoned this portion of his enumeration of error. See Court of Appeals Rule 25 (d) (1).

[8] OCGA § 24-6-613 (b) provides that "extrinsic evidence of a prior inconsistent statement by a witness shall not be admissible unless the witness is first afforded an opportunity to explain or deny the prior inconsistent statement and the opposite party is afforded an opportunity to interrogate the witness on the prior inconsistent statement or the interests of justice otherwise require."

[9] OCGA § 24-8-801 (d) (1) (A) provides that "[a]n out-of-court statement shall not be hearsay if the declarant testifies at the trial or hearing, is subject to cross-examination concerning the statement, and the statement is admissible as a prior inconsistent statement or a prior consistent statement under Code Section 24-6-613 or is otherwise admissible under this chapter."

the basis of a lack of foundation. As stated previously, "[i]n order to preserve an objection for appellate review, the specific ground of the objection must be made at the time the challenged evidence is offered. Therefore, we review this enumeration for plain error only." (Citation and punctuation omitted.) *Lopez*, 355 Ga. App. at 322 (2) (setting forth steps of plain error analysis); see also *Hurt v. State*, 298 Ga. 51, 53-54 (2) (779 SE2d 313) (2015) (finding that hearsay objection did not preserve for appellate review contention that State failed to lay a proper foundation).

It is true that the State failed to lay a proper foundation for impeachment testimony. But Simpson's statement to Holcombe was merely cumulative of other unobjected-to evidence regarding how her injuries occurred. As noted above, the police officer testified that Simpson told him Ward injured her by hitting her four or five times. In addition, Holcombe testified that she observed bruising on her mother leading her to believe, based on her mother's statements and history of abuse with other partners, that this "was a physical altercation." The prior inconsistent statement with which Ward takes issue was cumulative of this other evidence. See *Fraser v. State*, 329 Ga. App. 1, 2 (763 SE2d 359) (2014). Under these circumstances,

we cannot say that any alleged trial court error "likely" contributed to the verdict. See

*Lopez*, 355 Ga. App. at 323 (2). We find no plain error.

*Judgment affirmed. Doyle, P. J., and Watkins, J., concur.*